**CAROLE STUPELL, Ltd., Plaintiff,**

v.

**BLENKO GLASS COMPANY, Incorporated, Defendant.**

**No. 1413.**

United States District Court
S. D. West Virginia, Charleston Division.

Sept. 21, 1955.

Woodroe & Kizer and John O. Kizer, Charleston, W. Va., for plaintiff.

Jackson, Kelly, Holt & Moxley, W. T. O'Farrell, W. J. Carter, Charleston, W. Va., for defendant.

BOREMAN, District Judge, by special designation.

The plaintiff, Carole Stupell, Ltd., a corporation under the laws of the State of New York, instituted this action against the defendant, Blenko Glass Company, Incorporated, to recover from the defendant the amount of a judgment rendered against the plaintiff and in favor of one Edith Jentes in an action brought by her in the Supreme Court of New York, New York County, and costs and expenses including attorney's fees, incurred by the plaintiff herein in the defense of that action. Philip Lerman, an attorney of New York City, was employed by the plaintiff to defend it in the Jentes action and the only question to be determined here is whether or not a fee of $5,000 charged by the said Philip Lerman for his services rendered in the Jentes action is reasonable under all the circumstances; further, if such fee is

found to be unreasonable, the amount of legal fees to which the plaintiff is entitled.

For the sole purpose of indicating the nature of the action which Philip Lerman was employed to defend, the Court will set forth certain facts pertaining to the case of Edith Jentes against Carole Stupell, Ltd.

On or about May 1, 1948, the plaintiff, Carole Stupell, Ltd., which maintains a retail store for the sale of china, glassware and other household appointments and accessories at 507 Madison Avenue in New York City, purchased from the defendant, Blenko Glass Company, Incorporated, three dozen glasses known as Country Highball Glasses, manufactured by the defendant. These glasses were shipped by the defendant herein from its factory and place of business in the Town of Milton, West Virginia, to the plaintiff at its retail store in New York City and were received by the plaintiff about May 10, 1948, and duly inspected.

On or about April 25, 1949, the plaintiff, in the ordinary course of its business as a retailer, sold twelve of said glasses to Samuel C. Dretzin and Minna Dretzin, of Chappaqua, New York. Edith Jentes was employed as a domestic servant in the Dretzin household and she claimed that she was severely injured as a result of the breaking of one of those glasses while she was drying the same, cutting her hand and causing her severe personal injuries. She commenced her action against Carole Stupell, Ltd., in the Supreme Court of the State of New York, New York County, on March 18, 1950, for the recovery of damages in the amount of $25,000.

The complaint of Edith Jentes alleged that her injuries were due to negligence in the manufacturing, testing and inspecting of said glass in that the same was negligently and carelessly designed in an inferior, defective, unsuitable and inadequate manner; that the glass was negligently and carelessly made from inferior, defective and unsuitable material; that due care was not used in testing and in inspecting said glass to ascertain that the same was strong and safe for its intended use; that the manufacturer of said glass knew and should have known that unless such glass was properly designed, manufactured and constructed of suitable and adequate materials, said glass would be inherently dangerous and insecure and unsafe to life and limb of persons using said glass.

This Jentes action was tried at a term of court in which said action was pending on the 4th, 5th and 6th days of October, 1954, and, at the conclusion of the evidence, the plaintiff and defendant therein waived the submission of the case to a jury and submitted the case to the Court. The Court permitted the plaintiff to amend her complaint to include an additional cause of action "to conform to the proof". Thereafter, the Trial Court entered an order containing certain findings of fact and conclusions of law with the approval and consent of the attorneys for the parties to that action, and adjudged that said glass which broke and injured Edith Jentes was negligently and carelessly manufactured and designed by Blenko Glass Company, the same having been negligently and carelessly made from inferior, defective, unsuitable and inadequate materials which constituted a hidden and latent defect not visible to ordinary inspection; that the Blenko Glass Company, the manufacturer of the glass, knew and should have known that the same was purchased for resale by Carole Stupell, Ltd., and unless said glass was properly designed, manufactured, etc., the same would be inherently dangerous, insecure and unsafe to life and limb of persons using the glass in the manner for which it was intended; that Carole Stupell, Ltd., as a retailer, was liable to Edith Jentes for breach of an implied warranty of quality or fitness of glasses sold by the retailer to the Dretzins, and being the same glasses sold by Blenko Glass Company to Carole Stupell, Ltd. On October 25, 1954, judgment was rendered against Carole Stupell, Ltd., in favor of Edith Jentes for the sum of $3,500, which

judgment was paid by that defendant on October 26, 1954.

After the institution of the Jentes action and after Philip Lerman was employed to represent Carole Stupell, Ltd., in the defense of said action, he advised Blenko Glass Company, Incorporated, of the pendency of said action, requested assistance in the preparation of the defense thereof and advised this defendant that his client was looking to Blenko Glass Company for indemnification should Edith Jentes recover a judgment for personal injuries. Notwithstanding these notices and requests, this defendant refused to assist in the defense of said action, refused to assist in meeting the charge of negligence in the manufacture of the glasses, and refused to assume the defense of the Jentes action.

Depositions of Harry Mervis, Philip Lerman and David S. Konheim were submitted on behalf of the plaintiff, and the deposition of Vincent F. O'Rourke was submitted on behalf of the defendant. No witnesses testified before the Court.

The three witnesses who testified for the plaintiff agreed that $5,000 was a reasonable fee for the services rendered by Philip Lerman in the defense of the Jentes action. Harry Mervis is the Treasurer of Carole Stupell, Ltd., and the husband of Carole Stupell Mervis, the corporation President. David S. Konheim is an attorney of New York City, actively engaged in the practice of his profession since 1928.

Vincent F. O'Rourke, an attorney of New York City, having been engaged in active practice since 1930, stated in his deposition that a fee of $1,500 would be fair, adequate and reasonable compensation for the services rendered by Mr. Lerman in the Jentes case. Therefore, if the Court should be of opinion that a fee of $5,000 is unreasonably high, it would appear that the defendant, by its own witness O'Rourke, has admitted that a fee of $1,500 would be fair and reasonable.

The defendant, by counsel, points to the record in the Jentes action, which is before this Court as an exhibit, and argues vigorously that Philip Lerman displayed a "startling" lack of knowledge of the laws of the State of New York; that he did not skillfully defend the Jentes action and protect the interests of his client, Carole Stupell, Ltd.; that he was at fault in consenting to a judgment against his client in any amount, and in agreeing to the "utterly erroneous conclusion that Stupell was liable to Jentes as a retailer for breach of implied warranty of quality or fitness under Section 96 of the Personal Property Law of the State of New York". Philip Lerman, in his deposition, undertook to respond to this criticism and to justify the course of action to which he assented and agreed in submitting the Jentes case to the Court in lieu of a jury, in consenting to a judgment against his client in the amount of $3,500, and in agreeing to the findings of fact and conclusions of law as contained in the Court's order. He stated that he was fearful of a jury verdict in an amount much greater than the $3,500 agreed upon, and that he considered his course of action to the best interests of his client.

This Court is not favorably impressed with the defendant's criticism of Mr. Lerman's conduct of the trial of the Jentes case and the ultimate result of that litigation. The defendant was urged by letter to participate in the defense of the Jentes action, to take over the defense and to assist in other ways. As a last resort, Mr. Lerman caused the defendant to be served with a "Notice of Vouching-in", which was a formal demand that it assume the defense of the action, but the defendant did nothing pursuant to said requests and notice. It is a time-worn saying that "hind sight is better than foresight". Possibly some assistance from the defendant might have produced a different result in the Jentes trial. This Court cannot say. But it is certain that no help was accorded Mr. Lerman and he was left with the sole responsibility of the defense of the New York litigation. The

criticism comes with poor grace from the defendant and, in all fairness, the defendant cannot now be heard to complain of Mr. Lerman's conduct of the Jentes trial.

The Court has reviewed and considered Mr. Lerman's testimony concerning his services rendered in the Jentes action and the value placed by him upon such services. Frankly, that testimony leaves much to be desired. I shall attempt to briefly review the testimony of the witnesses as contained in their depositions.

At the time of his employment, Mr. Lerman was receiving a retainer of $200 per month from Carole Stupell, Ltd., for which he was rendering certain services, principally in connection with collections of accounts, leasing and tax matters. When he was approached by witness Harry Mervis concerning employment in the Jentes case, Mr. Lerman was asked as to what his fee would be but he declined to state an amount, explaining that he did not know how long the case would last or how much work would be involved. He stated only that his "fee would be fair".

The Jentes action was instituted about March 1950 and was not concluded until October 1954. Mr. Lerman kept no record whatsoever as to the time spent in connection with the preparation of the defense. He undertook only to guess or approximate the amount of time devoted to the whole case, with feeble attempts to indicate the time devoted to any particular phases other than the actual trial, which consumed three days. He stated that he spent "off and on, in the New York County Lawyers library, reading cases relating to the questions of law in this case, approximately two weeks, at different times" (deposition, Lerman—direct, page 7). Following this testimony, he introduced a penciled memorandum consisting of eight pages of excerpts from cases made in said search, and stated "This was on the work that I did in looking up the law". He represented that he did other research in his own library, but he could give no breakdown or itemization of the time devoted to a determination of the right of his client to recover over against Blenko Glass Company in the event of a judgment against Carole Stupell, Ltd. Mr. Lerman indicated that the Jentes action was full of perplexing problems, and this Court concludes that the question of possible liability of this defendant to his client was perplexing and was a matter of the utmost importance. As to some of the other questions, it would appear that they should not be too difficult for an attorney experienced in the trial of such actions.

Mr. Lerman testified that he expected to charge Carole Stupell, Ltd. (in addition to the $5,000 fee in the Jentes case) for his services in this case now being considered, and it is the opinion of this Court that it would be unfair to permit Mr. Lerman to include in his $5,000 fee a charge for the work done by him in the preparation of this case and to collect such charge from Blenko Glass Company, this defendant.

Mr. Lerman testified that it was necessary to consult with Mr. Mervis on numerous occasions concerning the Jentes action, but it must be remembered that during most of the period from the institution to the termination of that action, Mr. Lerman was employed on a retainer basis and was being consulted on numerous occasions concerning matters covered by his retainer. In the absence of some record of the extent and nature of such consultations or conferences, it is quite understandable that Mr. Lerman could give no comprehensive or detailed account of his time devoted to the Jentes case.

On cross-examination, Mr. Lerman was pressed for some statement as to his annual gross income, and it was conceded by him that such gross income would be an element entering "into the evaluation of a reasonable fee in any given case". He evaded the question, refusing to give even an approximation of his income for any of the years from 1950 through 1954. Mr. Lerman testified that he had no partner, that he practiced

alone and employed only one stenographer. This Court cannot believe that Mr. Lerman's memory could be so deficient respecting his gross income and thoroughly reliable as to guesses and approximations concerning other matters. When asked the question (deposition, Lerman—cross, page 94), "What do you consider the value of your actual working day?", he replied, evasively, "It depends upon what I do with it. There is no such thing as an ordinary day in a lawyer's life". He stated that $300 per day was, in his opinion, fair compensation for actual trial work in court. Further, during his cross-examination on page 98 of his deposition, the following questions and answers appear:

"XQ 55. As distinguished from all other services rendered by you in the Jentes case, how much of the $5,000 fee do you allocate to the actual trial of the case? A. I can't. I have never divided it.

"XQ 56. How much of the $5,000 fee sought by you is applicable to the research work you did? A. I don't know. I never made such an analysis.

"XQ 57. What part of the $5,000 fee sought is applicable to the four days or so devoted to the examinations before trial? A. I never divided it up that way. I don't know.

"XQ 58. What part of the $5,000 fee is applicable to the drawing of the one page answer, consisting of a general denial, or the demand for a bill of particulars? A. I never divided it up that way. I don't know."

Mr. Lerman opined that he had spent approximately thirty working days on the Jentes case, including all phases thereof. But his fellow attorney, Mr. Konheim, who gave his deposition, stated (deposition, Konheim—cross, page 158) as follows: "I think I have been fair, in my own mind, anyhow, in allocating approximately fifteen court days * * *. I would say that there could not be, at the very least, less than twenty days of time devoted to non-court stuff. Taking these time factors and the result of the litigation, plus the fact, as I mentioned before, of this overhead factor, I think that, by and large, $5,000 is a fair fee." But yet Mr. Konheim admitted he knew nothing about the nature or extent of the services rendered by Mr. Lerman except from Mr. Lerman's own testimony as to the services rendered by him.

█ Of course, there are different factors or elements to be taken into consideration in arriving at a determination of a fair and reasonable attorney fee. The standing of the attorney, his experience, the nature of his employment, the results achieved, the time actually consumed and his average monthly or annual gross income are among the factors to be considered if there is reliable evidence as to such factors before the Court. Mr. Konheim stated: "There is no way to measure fees with exactness. It is a field in which there can be much disagreement." Being in full agreement with his statement, this Court finds it difficult, from the evidence before it, to consider carefully some of the more important factors which should be considered in attempting to decide this question concerning which there appears to be a wide divergence of opinion.

Mr. O'Rourke, according to his testimony, having been almost continuously engaged for approximately nineteen years in the trial and defense of "actions involving large and serious matters", stated his familiarity with the reasonable value of services of attorneys defending negligence cases in the courts of New York. He heard Mr. Lerman's testimony as to services rendered in the Jentes case, just as Mr. Konheim heard that testimony; he reviewed the various exhibits, including the record in the Jentes case, and he gave as his opinion (deposition, O'Rourke—direct, page 6) "that the reasonable value of Mr. Lerman's services in the Jentes case is the sum of $1,500.00".

Aside from the problem of placing Carole Stupell, Ltd., in a position to ultimately recover from Blenko Glass

## 340

Company, it appears that the defense of the case of Jentes against Carole Stupell, Ltd., should not present extremely difficult and perplexing questions to one of Mr. Lerman's experience. One fact, which may or may not be significant, stands out in this case. Carole Stupell, Ltd., paid the Jentes judgment and other costs of that litigation except Mr. Lerman's fee of $5,000. The only excuse for such failure to pay, as offered by Mr. Mervis, the Treasurer, is that the corporation was "not in a position to pay that sum of money immediately". Months had passed by from the time Mr. Lerman's bill for services was presented to the giving of Mr. Mervis' testimony. Even though he testified that he considered $5,000 a reasonable fee for Mr. Lerman, perhaps he had some mental reservations and decided to await the decision in this case, should the reasonableness of that fee be challenged.

■ To be required to pass upon the value of an attorney's services to his client is an unenviable position in which a Court is sometimes placed. Particularly is it difficult for a Court in West Virginia to appraise the worth and services of a New York attorney, but this Court is not satisfied that adequate proof, has been adduced to sustain the claim of Mr. Lerman that thirty working days were necessarily consumed in the defense of the Jentes action. There is too much speculation, guess work, evasion and approximation to be convincing in view of the total lack of substantiating records. Mr. Lerman could not or would not give the Court even the faintest idea as to his gross income.

After careful deliberation, the Court is of the opinion that the fee of $5,000, as charged by Mr. Lerman against Carole Stupell, Ltd., is unreasonably high and that a fee of $3,000 is fair and reasonable under all the circumstances as presented for consideration here. In arriving at that sum, the Court believes that $250 for each of the three days spent in trial work is not unreasonable. A total fee of $3,000 would allow compensation at the rate of $150 per day

for fifteen days in addition to the trial days.

Counsel for the defendant are directed to prepare the appropriate order in conformity with the conclusions herein stated and submit such order to the Court for entry.