**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Plaintiff,**

v.

**Vernon E. RISSLER and W. N. McMurry, Partners, doing business as Rissler & McMurry Construction Co., and Truck Insurance Exchange, a corporation, Defendants.**

**Civ. No. 4322.**

United States District Court
D. Wyoming.
June 3, 1960.

Rose, Rose & Fisher, Casper, Wyo., for plaintiff.

Murane, Bostwick & McDaniel, Casper, Wyo., for defendants.

KERR, District Judge.

This is an action on an indemnity agreement executed by the Chicago and North Western Railway Company [1] and Rissler & McMurry Construction Company [2]. Prior to May 19, 1959, the date of the accident in question, the parties executed an instrument entitled "Contractor's Temporary Crossing License" [3]. Paragraphs 9 and 10 of the agreement provide as follows:

"It is understood by the Licensee that said facility is subject to and may increase the dangers and hazards of the operation of the Railway Company, and that this license is subject to all risks thereof. Therefore, the Licensee assumes and agrees to pay for all loss or damage to property whatsoever and injury to or death of any person, or persons whomsover, including all costs and expenses incident thereto, however arising from or in connection with the existence, construction, maintenance, repair, renewal, reconstruction, operation, use or removal of said facility, or any defect therein or failure thereof, or the failure of the Licensee or members, officers, agents or employees of the Licensee

1. Hereinafter referred to as "Railway Company".

2. Hereinafter referred to as "Construction Company".

3. Hereinafter referred to as "Agreement".

**100**

to abide by or comply with any of the terms or conditions of this license; *and the Licensee forever indemnifies the Railway Company against any such loss or damage to its property and agrees to indemnify and save it harmless from any and all claims, demands, lawsuits or liability for any such loss, damage, injury and death, costs and expenses, even though the operation of the Railway Company's railroad may have caused or contributed thereto.*

"Before any work of construction or maintenance is begun hereunder and before any use is made by the Licensee of said facility, the Licensee agrees to furnish and keep in force during the term of this License and submit to the Railway Company's Insurance Department for approval, a policy or policies of insurance covering Public Liability and Property Damage insurance with limits of not less than $200,000 for Bodily Injuries and/or Death resulting therefrom to any one person and, subject to such limits, of not less than $300,000 in any one accident, and with limits of not less than $300,000 for Property Damage in any one accident. Said insurance policy or policies shall be endorsed to assume the Contractual Liability which the Licensee has assumed under the terms and conditions of this license." (Emphasis supplied.)

The material facts are not in dispute. On May 19, 1959, at or about ten o'clock in the morning a collision occurred between a dirt mover being operated by the Construction Company and the Railway Company's freight train while said dirt mover was using the temporary crossing authorized by said agreement, resulting in property damages to the Railway Company in the amount of $68,-667.32. There is no dispute as to the amount of the damages resulting from said collision.

■ On April 21, 1959, the Construction Company signed the agreement and on the same date transmitted it with a letter to the Railway Company requesting permission for a temporary crossing to be located approximately 2.25 miles east of Casper, Wyoming. The agreement required the Construction Company to submit to the Railway Company's insurance department for approval a policy or policies of insurance covering public liability and property damage insurance and with limits of not less than $300,000 for property damage. The agreement further provided that the policy should be endorsed to assume the contractual liability which the Construction Company assumed under the agreement. The policy was issued in accordance with the terms of the agreement. The Construction Company urges that the contract was not returned by the Railway Company prior to the date of the accident. I think this is immaterial. The fact remains that the parties agreed upon the terms of the contract and the signatures amounted to a mere formality. The evidence discloses that the Construction Company was operating under the agreement for a period of three or four weeks prior to the accident.

At the pretrial conference each of the parties admitted that there was no flagman at the scene of the accident, that the Railway Company had not posted orders on the train board concerning the temporary crossing and that no whistle was blown immediately prior to the accident. During the course of negotiating the agreement the parties agreed not to place a flagman on the job if the Construction Company would caution its employees regarding the temporary crossing.

The Construction Company and the Truck Insurance Exchange urge that a contract to indemnify against one's own wilful and wanton negligence is against public policy and therefore void and unenforceable. There is respectable authority supporting this contention.

■■ If indemnity is to be allowed in this case it must be shown to result from a contractual relationship between

the parties. Indemnity springs from a contract, express or implied, which enforces a duty to respond for all the damages. Thomas v. Malco Refineries, Inc., 10 Cir., 214 F.2d 884. The legal liability which the Construction Company assumed must be found within the four corners of the contract.

The agreement constituting the subject of this controversy is clearly a unilateral contract wherein the Construction Company promised to indemnify the Railway Company in consideration of the Railway Company granting the Construction Company the privilege of constructing and using the temporary crossing. The granting of the permission by the Railway Company was purely one of accommodation through which it received no benefit. That the Construction Company received innumerable benefits from the temporary crossing there is no doubt.

It has been authoritatively stated in the Restatement of the Law of Property at Section 515(c) that formalities are not essential to the creation of a license. The consent of the licensor which is essential to a license may be manifested by conduct of any kind which is indicative of the licensor's consent to the use of his land by another. See Metcalf v. Hart, 3 Wyo. 514, 27 P. 900, 31 P. 407.

Turning now to the question of the Railway Company indemnifying itself against its own negligence. An agreement to place another person at the mercy of one's own negligence is not ipso facto against public policy. 12 Am. Jur., Sec. 181, page 282. Courts are cautious in voiding a contract on the ground that it violates public policy. The judicial function is to "maintain and enforce contracts rather than to enable parties thereto to escape from their obligations on the pretext of public policy unless it clearly appears that they contravene public right or the public welfare". Courts will not extend the public policy rule arbitrarily. Here the parties have entered into their own agreement freely and voluntarily.

The general rule is expressed in the Restatement of the Law of Contracts, Sections 574 and 575, as follows:

"§ 574. A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm is legal except in the cases stated in Sec. 575."

"§ 575. (1) A bargain for exemption from liability for the consequences of a wilful breach of duty is illegal and a bargain for exemption from liability for the consequence of negligence is illegal if * * * (b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public for which it has received or been promised compensation.

"Referring to these provisions, in the case of Fire Assn. of Philadelphia v. Allis Chalmers Mfg. Co., D.C.Iowa, 1955, 129 F.Supp. 335, 352, the Court said: 'The rule contained in that exception is in accord with the general rule. However that rule is not applicable to the contracts of a party charged with public service in connection with a contract with a party to whom such party is not rendering public service'."

The agreement was not entered into by the Railway Company as a part of its public duty but as an owner of land dealing in the capacity as a private party. It has been frequently stated by the courts that generally there is no public policy prohibiting railroads from contracting against the results of its own negligence, when the contract does not involve its operation as a common carrier. Sinclair Refining Co. v. Stevens, 8 Cir., 123 F.2d 186, certiorari denied 315 U.S. 804, 62 S.Ct. 632, 86 L.Ed. 1203; J. V. McNicholas Transfer Co. v. Pennsylvania R. Co., 6 Cir., 154

F.2d 265; Minneapolis-Moline Co. v. Chicago M., St. P. & P. R. Co., 8 Cir., 199 F.2d 725; Buffa v. General Motors Corp., D.C.Mich., 131 F.Supp. 478.

■ The Railway Company urges that the indemnity clause of the agreement is broad enough to include any alleged negligence attributed to it. The Construction Company on the other hand relies on the strict rule of construction and asserts that there is no reference to negligence in the indemnification provision of the license. The pertinent provision of the indemnity clause with respect thereto provides:

" * * * and the Licensee forever indemnifies the Railway Company against any such loss or damage to its property and agrees to indemnify and save it harmless from any and all claims, demands, law suits or liability for any such loss, damage, injury and death, costs and expenses, even though the operation of the Railway Company's railroad may have caused or contributed thereto."

True, the term "negligence" is omitted from the above provision but clearly the agreement covers any and all damages which the Railway Company may sustain even though it may have caused or contributed to the accident causing the damages. See 175 A.L.R. 10, 30, 37; Chicago, & N. W. R. Co. v. Chicago Packaged Fuel Co., 7 Cir., 183 F.2d 630; Santa Fe, Prescott & Phoenix Ry. Co. v. Grant Brothers Construction Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787. In the case of Fire Association of Philadelphia v. Allis Chalmers Mfg. Co., D.C., 129 F.Supp. 335, the Court said at page 355:

"It seems clear that it is not necessary that the parties make use of the word 'negligence' in a provision in order to make the provision applicable to a party's own negligence and that it is sufficient if the parties by 'apt language' include such negligence."

In the case of Minneapolis-Moline Co. v. Chicago M., St. P. & P. R. Co., 8 Cir., 199 F.2d 725, the court held that the railroad was exempt from its own negligence, where, in the contract of indemnity, the company agreed to save the railroad company harmless from damages, remote as well as proximate in anywise resulting from the non-performance or non-observance of a covenant.

A like finding was made in Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Olvera et al., 9 Cir., 119 F.2d 584, where the indemnity provision, as in the case at bar, included the assumption of all risk by the indemnitor. At page 586 the Court said:

"It will be noted that negligence is not mentioned as an excepted liability. * * * The United States Supreme Court, in determining the common law with regards to such agreements, before Erie Railway v. Tompkins * * * has held that, though negligence is not mentioned in the exempting clauses, such broad provisions going to the essence of liability as 'all risk of loss or damage', * * * relieve from liability for ordinary negligence a railroad company contracting in its private and not public service capacity." (Citing Santa Fe, Prescott & Phoenix Railway Co. v. Grant Bros. Constr. Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787.)

■ It is unnecessary to discuss the question of the Railway Company indemnifying itself against its own wilful and wanton acts of negligence. Suffice it to say a review of all the evidence, facts and circumstances of the case persuades me to the belief that *if* the Railway Company were guilty of negligence in its failure to notify the train crew of the temporary crossing that incident at most would be simple or ordinary negligence.

■ The Construction Company has cited several authorities supporting its contention that attorney fees should not be allowed in the case at bar. I have

examined these authorities and I am constrained to find them not applicable to the facts of this case. The indemnity provision in the license refers not only to loss and damage to property but it also provided that the Railway Company will be saved harmless from "any and all claims, demands, law suits * * *". The apparent language of the contract was to protect the Railway Company against, among other things, being subjected to law suits. That it was necessary to employ counsel to institute this action is too elementary to necessitate a discussion. I am of the opinion that the Railway Company should be reimbursed for its attorney's fees and costs of this litigation which has arisen under the agreement. See General Accident Fire & Life Assurance Corp. v. Smith & Oby Co., 6 Cir., 272 F.2d 581; New Amsterdam Casualty Co. v. Kilroy Structural Steel Co., Ohio App., 159 N.E.2d 797; Chesapeake & Ohio Railway Co. v. Bailey Production Corp., D.C., 163 F.Supp. 666; Carole Stupell, Ltd. v. Blenko Glass Co., D.C., 137 F.Supp. 335; B. & G. Electric Co. v. G. E. Bass & Co., 5 Cir., 252 F.2d 698, certiorari denied 357 U.S. 931, 78 S.Ct. 1372, 2 L.Ed. 2d 1371; Pure Oil Co. v. Geotechnical Corp. of Delaware, D.C., 129 F.Supp. 194.

In the course of the investigation the Railway Company incurred expense in the amount of $100 for pictures taken at the scene of the accident. These photographs were used in the trial of the cause and constitute damages incurred by the Railway Company under the terms of the agreement.

From what I have said I hold the Railway Company is entitled to judgment in the following amounts: Property damages, $68,667.32; photographs, $100; and a reasonable attorney fee in the amount of $1,500.

Plaintiff will prepare findings of fact and conclusions of law, together with judgment, in accordance with this memorandum opinion within twenty (20) days from the date hereof and the clerk will enter an order accordingly.