**SOUTHERN PACIFIC TRANSPORTA-TION COMPANY, a corporation, Plaintiff-Appellee,**

v.

**Darrell NIELSEN, d/b/a Nielsen Warehouse Co., Defendant-Appellant.**

**No. 647–70.**

United States Court of Appeals, Tenth Circuit.

Sept. 13, 1971.

Ernest F. Baldwin, Jr., Salt Lake City, Utah, for appellant.

L. Ridd Larson and Marvin J. Bertoch, Salt Lake City, Utah, for appellee.

Before BREITENSTEIN and Mc-WILLIAMS, Circuit Judges, and KERR, District Judge.

KERR, District Judge.

This diversity action stems out of indemnity provisions included in a Bill of Sale between Southern Pacific Transportation Company,[1] as Seller, and Darrell Nielsen, as Buyer.

The controversial provisions of the Bill of Sale provide:

"7. Buyer agrees to reimburse Railroad the cost to Railroad * * * for performing any work deemed necessary, in the judgment of Railroad, to protect and safeguard property, * * * of Railroad while Buyer is performing the work contemplated by the terms and provisions of this indenture.

"8. Buyer hereby * * * agrees to indemnify and save harmless Railroad * * * from and against *all loss, damage, liability, * * * expense and causes of action, of whatsoever character, including injuries to or deaths of any and all persons * * * arising out of or in connection with the work to be performed* by Buyer, or the employees, agents, and contractors of Buyer, or from the presence on, in or about the premises

of Railroad by such persons * * * and regardless of any negligence or alleged negligence on the part of any Railroad employee or agent." (Emphasis supplied)

The facts are not in dispute and may be briefly summarized as follows:

On or about October 27, 1964, Nielsen was informed that Southern Pacific was going to sell certain steel bridges which crossed the Humboldt River near Barth, Nevada. Nielsen, together with Lee Marsden, an employee of Southern Pacific, and Edward Habertson, Nielsen's foreman, discussed the purchase of the three bridges. Marsden explained the old bridges would be "rolled" a few feet from their original location, and new ones "rolled" into their places. He further stated that the old bridges would have to be removed promptly for they could be a possible cause of damage to the new bridges. Marsden then offered to sell Nielsen the three bridges for $100.00 each, provided he would remove them promptly.

On October 27, 1964, by signing a Bill of Sale, Nielsen agreed to buy the "7th Humboldt" bridge. It was this Bill of Sale that contained the above quoted provisions concerning the indemnity of Southern Pacific by Nielsen. At the time the agreement was entered into by the parties, the 7th Humboldt bridge had been removed from its original position and placed on Southern Pacific property in close proximity to the new bridge that replaced it.

By November 18, 1964, Nielsen's employees had cut the steel beams of the bridge into proper lengths for hauling. Since some of these beams were lying in the riverbed, Southern Pacific directed Nielsen to remove them because it feared the beams could create an ice jam and cause damage to the new bridge. Nielsen did not have the proper equipment to facilitate the removal so Southern Pacific furnished a D–8 Caterpillar and operator to aid in the removal of the beams from the riverbed. Another

---

1. Hereinafter referred to as Southern Pacific.

Southern Pacific employee who was present at the scene on November 18, 1964, was Louis T. Garneau. Garneau, however, was not involved with the work being done by the Caterpillar but was merely a casual observer.

To remove the beams, Mr. Habertson and two other Nielsen employees would tie three or four beams to the blade of the Caterpillar which would then lift and pull them from the riverbed. The record discloses that it was agreed Mr. Habertson was to direct the operator of the Caterpillar in the performance of this work. Two loads of beams were removed without incident. However, while endeavoring to remove a third load, one beam broke loose and dropped down, causing the front end of the beam to catch under a frozen ledge. The movement of the Caterpillar caused the other end of the beam to swing, thereby striking and killing Mr. Garneau, who was standing to the left and ten feet ahead of the Caterpillar blade.

On February 24, 1966, Edith Kalb, as Special Administratrix of the Estate of Louis T. Garneau, filed a wrongful death action against Southern Pacific in California. The Administratrix claimed Garneau's widow suffered damages in the amount of $200,000.00 occasioned by the death of her husband. Southern Pacific gave Nielsen timely notice of this suit in order for him to take over its defense pursuant to the terms in the aforementioned Bill of Sale. Nielsen refused to defend the action, whereupon Southern Pacific made a settlement with the Special Administratrix, Edith Kalb, in the sum of $60,000.00 in consideration for the dismissal of the action. Nielsen stipulated in the federal court that this was a just and reasonable settlement and he further stipulated that Southern Pacific's legal expenses of $1,000.00 in defending the action were just and reasonable.

Southern Pacific sought indemnity for these expenses from Nielsen in the United States District Court for the District of Utah, Northern Division. That court, in a memorandum decision, held that Nielsen was obligated to indemnify Southern Pacific for any liability the Railroad incurred, including liability for its own negligence as well as for any liability arising from the Federal Employers Liability Act. The court awarded Southern Pacific judgment for $61,076.-00, which included the expenses incurred by the Railroad for attorney's fees.

Nielsen, in this appeal, raises three issues which will be discussed separately.

His first contention is that the federal district court erred in finding the agreement obligated him to indemnify Southern Pacific for its own negligence, and for further finding the agreement contemplated indemnification for amounts paid by Southern Pacific to employees under the F.E.L.A. He asserts that agreements to indemnify one for his own negligence are not looked upon with favor in law, and that the agreement involved here is unclear and vague, thereby not expressing an intent to indemnify the Railroad for its own negligence.

The general rule is that while such provisions are not favorites of the law, "* * * they are enforceable provided they are made at arm's length without disparity of bargaining power, and the intent of the parties is manifestly plain and unequivocal". Titan Steel Corporation v. Walton, 365 F.2d 542, 548 (10th Cir. 1966). Utah has adopted this general rule and upholds such indemnity provisions where the intent of the parties is clearly and unequivocally expressed. Union Pacific Railroad Co. v. El Paso Natural Gas Co., 17 Utah 2d 225, 408 P.2d 910 (1965). The Supreme Court has held in the case of United States v. Seckinger, 397 U.S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (1970), that "* * * a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties.".

The intent of the parties to indemnify Southern Pacific for its own negligence

is found within the four corners of the Bill of Sale constituting the subject of this controversy. Chicago & North Western Railway Co. v. Rissler, 184 F. Supp. 98 (D.C.Wyo.1960). The necessary intent required by the above quoted authorities is apparent from the clear language found in the Bill of Sale. Paragraph 8 states that the "Buyer * * * agrees to indemnify and save harmless Railroad * * * from and against * * * all * * * liability * * * regardless of any negligence or alleged negligence on the part of any Railroad employee or agent". This language clearly and unequivocally states the parties' intent to indemnify the Railroad for its own negligence. Where a Railroad is dealing privately and not as a common carrier, courts have frequently stated that "* * * there is no public policy prohibiting railroads from contracting against the results of their own negligence, * * * *". Chicago & North Western Railway Co. v. Rissler, supra. Furthermore, the record indicates the parties freely entered into the contract at arm's length and without the exercise of superior bargaining power. Titan Steel Corporation v. Walton, supra.

 Nielsen claims that the language in paragraph 8 of the Bill of Sale, which states, "Buyer * * * agrees to indemnify and save harmless Railroad * * * from and against all loss * * * arising out of or in connection with the work to be performed by Buyer, or the employees, agents, and contractors of Buyer, *or from the presence on, in or about the premises of Railroad by such persons,* * * *" does not include indemnifying the Railroad for its liability to its own employees under the F.E.L.A. Nielsen contends the words "by such persons" refers only to employees of the Buyer. This, however, overlooks a preceding phrase which states "Buyer * * * agrees to indemnify and save harmless Railroad * * * from and against all * * * liability * * * of whatsoever character, including injuries to or

deaths of *any and all persons* * * * arising out of or in connection with the work to be performed by Buyer * * * *". [emphasis supplied] If this last phrase is held to include all persons except Southern Pacific employees, it would introduce an ambiguity into an otherwise unambiguous phrase.

The Supreme Court of Utah, in a recent decision embracing a contract similar to the Bill of Sale here involved, held that the parties had contemplated, at the time of contracting, coverage for any liability the railroad was obligated to pay by reason of the F.E.L.A. Oregon Short Line R. Co. v. Idaho Stockyards Co., 364 P.2d 826, 828 (1961). The Second Circuit, in considering whether the word "negligence" as used in an indemnity contract was intended to also pertain to negligence within the meaning of the F.E.L.A., stated that "* * * the parties to the contract are held to have known of the existence of the federal statute at the time they executed their agreement * * * *". Wanser v. Long Island Railroad Co., 238 F.2d 467, 470 (2nd Cir. 1956).

It can be inferred from the Bill of Sale here involved, that the parties had contemplated indemnifying the Railroad for its liability imposed by the F.E.L.A. Paragraph 7 of the contract denotes that at the time of contracting the parties had anticipated Southern Pacific employees might be involved with the work to be performed by Buyer. The relevant phraseology taken from the paragraph states, "Buyer agrees to reimburse Railroad the cost to Railroad of furnishing watchmen, flagmen or inspectors and for performing any work deemed necessary, in the judgment of Railroad, to protect and safeguard property * * * of Railroad * * * *". Paragraph 8 of the contract states the Buyer must indemnify Southern Pacific for its "* * * liability * * * of whatsoever character, including injuries to or deaths of any and all persons * * * arising out of or in connection with the work to be performed by Buyer * * * *". Considering these two para-

graphs together, it seems clear that the term "any and all persons" includes Southern Pacific employees.

Nielsen next contends that Garneau's death did not arise out of nor was it in connection with the work to be performed by Buyer. The Bill of Sale in Paragraph 8 contained the provision that Nielsen was to indemnify Southern Pacific for all liability "arising out of or in connection with the work to be performed by Buyer". It is Nielsen's theory that the removal by Southern Pacific of the steel beams from the riverbed was not in connection with the work to be performed by him.

In the case of Alamo Lumber Co. v. Warren Petroleum Corp., 316 F.2d 287 (5th Cir. 1963), Alamo contracted to build cabinets in a chemical laboratory for Warren, agreeing to indemnify Warren for any and all liability " * * * which arises out of or in connection with the activities of Contractor [Alamo] * * * ". Two of Alamo's employees were overcome by gas escaping from an uncapped pipe while building the cabinets. Alamo contended the damage claim paid by Warren to the two men did not " * * * 'arise out of or in connection with' its contractual obligations * * * " to Warren. The Fifth Circuit properly rejected this contention stating, "(t)he only requirement for indemnity is that the employee's injury have some connection with Alamo's work * * * ". The court went on to say that "Giving the words 'in connection with' their natural and ordinary meaning, * * * the injuries were sustained in connection with Alamo's contract with Warren".

Paragraph 7 of the Bill of Sale provides that the Railroad is to be indemnified for any costs incurred by it in safeguarding its property from damages which might arise from the work Buyer was to perform in removing the bridge. If it was necessary for Southern Pacific to safeguard its property from damage, it was only because Nielsen's work created this necessity. Since the record shows that Southern Pacific did find it necessary to incur expenses in safeguarding its property, the injury resulting from this work arose from or in connection with the work Nielsen was performing.

In the trial court Nielsen contended that the injury was not in connection with the work he was to perform, because the agreement only required the Buyer to remove the bridge from Southern Pacific land. The trial judge, however, properly rejected this contention since this issue was not included within the pre-trial order. Case v. Abrams, 352 F.2d 193, 195 (10th Cir. 1965).

Nielsen's last argument pertains to indemnifying Southern Pacific for its attorney's fees and costs. He maintains that since the attorneys representing Southern Pacific were salaried employees of the railroad, Southern Pacific did not suffer any losses because it was obligated to pay them irrespective of the present law suit.

The pertinent statement found in the Bill of Sale states that "Buyer * * * agrees to indemnify * * * Railroad * * * from and against all loss, damage, liability, claims, demands, expense and causes of action, of whatsoever character * * * ". It seems evident that attorney's fees would naturally fall within the meaning of this phrase and numerous authorities have held an indemnitor liable for attorney's fees under agreements similar to the one quoted above. See Titan Steel Corp. v. Walton, supra; Southern Arizona York Refrigeration Co. v. Bush Mfg. Co., 331 F.2d 1 (9th Cir. 1964); Chicago and North Western Railway Co. v. Rissler, supra.

The expenses incurred by Southern Pacific for attorney's fees were a direct outgrowth of this wrongful death action whether or not the attorneys were house counsel or from a private firm. The Railroad was obligated to pay these expenses and under the contract Nielsen was obligated to indemnify it for such

payments. Thus Nielsen is not only liable to Southern Pacific for the amount it paid in settlement of the wrongful death action, but for Southern Pacific's attorney's fees as well.

Affirmed.