**SUMMERS HARDWARE AND SUPPLY COMPANY, INC., Plaintiff–Appellant,**

v.

**John M. STEELE, Defendant–Appellee.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

April 26, 1990.

Application for Permission to Appeal Denied by Supreme Court July 23, 1990.

H. Wayne Graves and Charles T. Herndon, IV, Herndon, Coleman, Brading & McKee, Johnson City, for plaintiff-appellant.

Douglas S. Tweed, Hunter, Smith & Davis, Kingsport, for defendant-appellee.

## OPINION

LEWIS, Judge.

Plaintiff, Summers Hardware and Supply Company, Inc. (Summers), filed its complaint against defendant John M. Steele and alleged, *inter alia,* that as a part of a lease agreement defendant agreed to indemnify Summers "from any liability ... in connection with [defendant's] occupation of the premises" and that Summers, as the result of injuries to a third party occurring on the leased premises, made payments to the third party and the defendant failed to indemnify Summers as required by the lease.

Defendant moved for summary judgment and Summers moved for partial summary judgment on the issue of liability.

The trial court denied Summers' motion for partial summary judgment, granted defendant's motion for summary judgment and dismissed Summers' complaint with prejudice.

In ruling on a motion for summary judgment, both the trial court and the appellate court must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, *i.e.,* the court must view all evidence before it in the light most favorable to the opponent of the motion and draw all legitimate conclusions of fact therefrom in the opponent's favor. If a disputed issue of material fact is made out after so doing, the motion must be denied. *Berry v. Whitworth,* 576 S.W.2d 351 (Tenn.App.1978); Tenn.R.Civ.P. 56.03.

The pertinent facts are as follows:

Summers owned and controlled a two-story building (the Annex) located at the corner of Buffalo and Ash Streets in Johnson City, Tennessee, across the street from Summers' main office. The upper floor of the Annex contained four rooms, a small bathroom and a landing for a lift device. The lift device was located approximately in the center of the Annex and went from the lower level to the upper level and was previously used by Summers for moving merchandise from one floor to another.

On 18 March 1986, Summers and defendant entered into a written lease agreement (Lease) whereby Summers would lease the upper floor of the Annex to defendant, an art professor at East Tennessee State University, for defendant's use as a private studio.

The pertinent portions of the Lease are as follows:

Description of premises:

The upper floor of the Summers Hardware Annex located at the corner of Buffalo and Ash Streets, Johnson City, Tennessee, being 301 Ash Street, including the stairway going up to the second floor.

. . . .

12. Lessee agrees to indemnify and hold the Lessor harmless from any liability whether in tort or contract, in any way arising in connection with this Lease or in connection with the Lessee's occupation of the premises. The Lessee agrees to maintain liability insurance covering anyone who may be injured on or about the premises in the amount of $25,000.00 per person and $50,000.00 per occurrence. The Lessee agrees to hold Lessor harmless and pay any and all liability that Lessor my incur because of any person injured on or about the leased premises. Further, Lessee agrees to hold Lessor harmless and assume all liability to any person on account of any property damages resulting from Lessee's use of the leased premises.

. . . .

18. Wherever this Lease Agreement refers to the demised premises or the space included in the demised premises,

it is understood and agreed that the space of the demised premises is measured from the center line of each wall which encloses the space of the demised premises.

Defendant began moving into the leased premises on 24 March 1986. Mr. Wallace, President of Summers, offered the use of the lift to defendant when defendant was moving something into the leased premises that was "heavier than normal." Nothing in the Lease provided that defendant could use the lift and defendant was not permitted the use of the lift on a daily basis.

Defendant's only access to the upper floor of the Annex was through an outside stairway leading to an outside door which faced Buffalo Street. Defendant was to use the stairway outside the building for his daily use. Defendant had no responsibility for the first floor.

The lift was inspected by Summers' insurer and Summers' employee Paul Davison. Summers was solely responsible for the maintenance and repairs for the lift. Defendant did not have a duty to repair, maintain or inspect the lift and did not possess any right to operate the lift. The lift device had a sign on it which said "No riders." When the lift device was on the first floor, it left a hole in the second floor with a "fence" on each side. It was contemplated that the lift would be left in position on the upper floor for safety purposes and to make the upper floor easier to heat.

When defendant began moving into the leased premises, he was helped by his son, Paul Steele, and Bill Nickels. In accordance with Summers' offer of the use of the lift when necessary to move something heavier than normal, defendant chose to use the lift device to move a table saw to the upper floor. Since defendant did not have access to the lower floor, Summers' maintenance and electrical employee, Paul Davison, unlocked the doors of the building to enable defendant to gain entry to the first floor and the lift. Defendant, Paul Steele, Mr. Nickels, and Mr. Davison loaded the table saw onto the lift platform. Paul Steele got on the lift with the table saw at

defendant's request and Mr. Davison pushed the button that set the lift in motion. The lift traveled to the second floor, but before the doors opened, a clicking noise was heard and the lift fell to the lower floor and injured Paul Steele.

Paul Steele subsequently sued Summers. Summers tendered the defense of the lawsuit to defendant who refused to defend or hold Summers harmless. Summers settled the lawsuit with Paul Steele and brought suit to recover monies expended in the defense and settlement of the lawsuit.

■ Summers first argues that the lift device was a part of the leased premises.

We find nothing in the language of the Lease from which it can be argued that the lift is a part of the leased premises. Defendant leased only the upper floor. His access to the upper floor was from an outside stairway. Defendant had no access to the lower floor except by express permission. The lower floor remained locked and the keys were in the possession of Summers. Defendant was not to have the use of the lift absent express permission. On the date Paul Steele was injured, an employee of Summers unlocked the front door and defendant used the lift with the express permission of Summers. Summers' employee then pressed the button which set the lift in motion at the time Paul Steele was injured.

■ Summers next argues that the trial court erred in granting defendant's motion for summary judgment because the defendant agreed to "indemnify and hold [Summers] harmless from any liability ... in any way arising in connection with this Lease or in connection with [defendant's] occupation of the premises."

It is not contended, nor does the record show, that Paul Steele's injuries were in any way caused by defendant's negligence. Any negligence is attributable to Summers only. However, Summers insists that under the terms of the Lease it makes no difference because defendant is to indemnify Summers for damages incurred by Summers from either defendant's negligence or Summers' negligence.

Justice White, writing for our Supreme Court in *Kroger Co. v. Giem*, 215 Tenn. 459, 387 S.W.2d 620 (1964), stated:

The Court of Appeals said, and we agree to its correctness, that it is nearly a universal rule that there can be no recovery where there was concurrent negligence of both indemnitor and indemnitee unless the indemnity contract provides for indemnification in such case by "clear and unequivocal terms;" and general words will not be read as expressing such an intent.... The only case from this State which discusses this rule, which has been cited or which we have been able to find, is *Buckeye Cotton Oil Co. v. Louisville & Nashville R. Co.*, 24 F.2d 347, 348 (6th Cir.). In that case it is said:

"There is no rule of public policy which forbade the railroad company from contracting with the oil company for indemnity against damages which the railroad might be required to pay as the result of the ordinary negligence of its employees in operating engines and cars on these tracks. * * It is said, however, and rightly so, that a contract will not be so construed, unless it was clearly intended to have that effect. This, of course, does not mean that the intention must be expressed in terms, but that, if not so expressed, it must otherwise clearly appear in the language used."

*Id.* 215 Tenn. at 472–73, 387 S.W.2d at 626 (citations omitted).

In order for a contract to be construed to allow an indemnitee to be indemnified for damages he has suffered because of his own negligence, the contract must express in the clearest of language such an intent. "Mere general, broad, and seemingly all inclusive language in the indemnifying agreement has been said not to be sufficient to impose liability for the indemnitee's own negligence." *Wajtasiak v. Morgan County*, 633 S.W.2d 488, 490 (Tenn.App. 1982) (citing 41 Am.Jur.2d *Indemnity* § 13).

■ In support of its position that the language of the Lease here is sufficient to cause the defendant to indemnify Summers

for Summers' own negligence, Summers cites several cases. The first, *Cocke County Bd. of Highway Comm'rs v. Newport Utilities Bd.*, 690 S.W.2d 231 (Tenn.1985), does not support Summers. The Court in *Newport Utilities* specifically found that the party to be indemnified was not guilty of any negligence. *Id.* at 236. Likewise, in *Fuqua v. Aluminum Co. of Am.*, 631 S.W.2d 140 (Tenn.App.1982), the Court found that "the indemnitee is not guilty of active negligence." *Id.* at 142.

Summers also relies on a federal trial court case, *Chicago and North Western Transp. Co. v. V & R Sawmill, Inc.*, 501 F.Supp. 278 (D.S.D.1980). Cases from other jurisdictions, including federal cases, are always instructive, sometimes persuasive, but never controlling in our decisions. However, even if *V & R Sawmill* were controlling, it would not add anything to Summers' argument. In fact, it supports defendant's insistence.

In *V & R Sawmill*, there are two indemnification provisions. The first contained in the lease provides as follows: "Lessee also agrees to indemnify and hold harmless the Lessor against loss, damage or injury to the person or property of the Lessee, or any other person, while on or about the leased premises...." *Id.* at 279.

The second was contained in the licensing agreement and provided:

It is understood by the Licensee that said facility is subject to and may increase the dangers and hazards of the operation of the railroad of the Railway Company, and that this license is subject to all risks thereof. Therefore, and as a material consideration to the Railway Company for entering into this license and without which the Railway Company will not enter into same, the Licensee agrees to assume and pay for all loss or damage to property whatsoever, and injury to or death of any person, or persons whomsoever, including all cost and expenses incident thereto, however arising from or in connection with the existence, construction, maintenance, repair, renewal, reconstruction, operation, use or removal of said facility ...; and the Licensee forev-

er indemnifies the Railway Company against and agrees to save it harmless from any and all claims, demands, lawsuits or liability for any such loss, damage, injury and death, costs and expenses, *even though the operation of the Railway Company's railroad may have caused or contributed thereto.*

*Id.* at 279–80 (emphasis supplied).

The Court, regarding the indemnification clause contained in the lease, stated:

In regard to the lease agreement, it appears to this court that the language used is not clear enough to establish that the parties intended to indemnify Plaintiff for its own negligence. Somewhat similar language was employed in an indemnification agreement in the case of *Gimbel Brothers, Inc. v. William H. Vanderherchen, Inc.*, 468 F.2d 597 (3rd Cir.1972). In denying defendant's request for indemnification the court stated:

"The language here, while broad, does not specifically state that Vanderherchen is to be indemnified against liability arising out of Vanderherchen's own negligence. Consequently, we hold that the clause is not an effective defense to the allegations in Gimbel's complaint."

*Id.* at 282 (citation omitted).

The court then discussed the language of the licensing agreement as follows:

On the other hand, it appears the language in the licensing agreement is clear enough to establish the intent to provide Plaintiff protection against its own negligence. First of all, the clause begins with a statement recognizing the increased hazards caused to Plaintiff by the existence of the wood chip plant. Secondly, the clause concludes with the phrase, "even though the operation of the Railway Company's railroad may have caused or contributed thereto." *Chicago & Northwestern Railway Co. v. Rissler*, 184 F.Supp. 98 (D.Wyo.1960), involved an indemnity agreement entered into by the Plaintiff railroad and Defendant. The agreement was almost identical to the one contained in the license in the instant case. The Wyoming District Court determined that even though the

term "negligence" was not used, the intention to indemnify the railroad against its own negligence was clearly conveyed and Defendant was therefore found to be obligated to indemnify Plaintiff. This court finds that the language used in the licensing agreement clearly unequivocally established the parties' intention to indemnify Plaintiff against liability resulting from its own negligence.

*Id.* at 282.

*V & R Sawmill* does not buttress Summers' argument in any way but, to the contrary, fully supports the well settled rule in this state, *i.e.*, if one is to be indemnified for his/her own negligence, the indemnifying agreement must clearly and unequivocally so state.

The Lease in *V & R Sawmill*, while very broad, was not clear and unequivocal. The licensing agreement, while not using the word "negligence," was clear and unequivocal that the railroad was to be indemnified for its own negligence. The railroad company was to be indemnified even though "the operation of the railway company's railroad may have caused or contributed [to the claims, etc.]."

There is nothing in the Lease which remotely can be construed to provide that Summers is to be indemnified for its own negligence.

Summers next argues that, in any event, defendant was obligated to purchase insurance to cover the lift as a part of the leased premises.

The Lease obligates defendant to purchase insurance "covering anyone who may be injured on or about the premises." The Lease obligates Summers to maintain fire insurance on the building and paragraph 14 of the Lease specifically obligated Summers to maintain liability insurance "on the land on which the demised premises are located." The parties clearly contemplated that Summers would maintain liability insurance on that part of the improvement not leased to defendant. The record shows that Summers did so and that Summers' insurer periodically inspected the lift device.

Summers alleges that the policy provides no protection to it. This argument is without foundation. The insurance policy specifically insures defendant not only for his own negligence but also for his liability under an "incidental contract." "Incidental contract" is defined in the policy to include "any written lease of premises." The policy issued to defendant specifically states at subparagraph (j) that the exclusion regarding indemnification obligations does not apply to indemnity liabilities assumed under the "incidental contract."

Summers is not an insured under the policy and nothing in the Lease requires that defendant purchase insurance naming Summers as an additional insured. However, if an accident arises for which defendant is liable to indemnify Summers in accordance with paragraph 12 of the Lease, the policy will cover defendant for that obligation.

We have considered each of the issues presented by Summers and find them to be without merit. Our review of the record reveals that there is no disputed issue of material fact and that the defendant is entitled to judgment as a matter of law.

The judgment of the trial court is therefore affirmed with costs on appeal assessed to Summers and the cause remanded to the trial court for the collection of costs and any further necessary proceedings.

GODDARD and ANDERSON, JJ., concur.