IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 22, 2002 Session

## CHRISTOPHER N. ROBINSON v. WILLIAM FULLITON

**An Appeal from the Chancery Court for Shelby County**
**No. CH-00-1645-3     D. J. Alissandratos, Chancellor**

_____

### No. W2001-01753-COA-R3-CV - Filed February 14, 2003

_____

This is a wiretapping case.  A husband and a wife were experiencing marital difficulties.  During that time, the husband tape recorded a telephone conversation between his wife and her brother without the knowledge of either.  When the brother found out, he filed a lawsuit against the husband, his brother-in-law, seeking damages under the civil damages provision of the Tennessee wiretapping statutes, Tenn. Code Ann. § 39-13-603.  The trial court, sitting without a jury, held that the husband was liable to his brother-in-law, and awarded nominal compensatory damages, litigation expenses, and attorney's fees.  The husband and the brother-in-law both appeal that decision, arguing that the damage award was erroneous.  We reverse the trial court's award of damages, finding that the statute requires that, when a violation is established, the trial court must award either the actual damages or the statutory minimum penalty of $10,000, whichever is greater.

### Tenn. R. App. R. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed and Remanded

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Ronald D. Krelstein, Germantown, Tennessee, and Steven M. Markowitz, Memphis, Tennessee, for the appellant, Christopher N. Robinson.

Clifford M. Cole, Memphis, Tennessee, for the appellee, William Fulliton.

### OPINION

Plaintiff/Appellant Christopher N. Robinson ("Robinson") is the brother of Leslie Robinson ("Leslie"), who was previously married to Defendant/Appellee William Fulliton ("Fulliton").  While William and Leslie Fulliton were married but experiencing marital difficulties, Fulliton tape recorded a telephone conversation between Leslie and her brother Robinson.  Neither Leslie nor Robinson was aware that their telephone conversation was being recorded.  Fulliton apparently later told his divorce attorney, Valerie Corder, about the recorded conversation, and the contents of the telephone

conversation were referred to during the course of the divorce proceeding. On January 17, 2000, Robinson learned that Fulliton had previously recorded the telephone conversation between him and his sister Leslie.

On August 21, 2000, Robinson filed this lawsuit against Fulliton, pursuant to Tennessee's Wiretapping and Electronic Surveillance Act of 1994, Tennessee Code Annotated §§ 39-13-603 and 40-6-301 ("the Act"), seeking injunctive relief and damages arising out of the telephone recording. The damages available for such an action are set forth in section 39-13-603:

(a) . . . [A]ny aggrieved person whose wire, oral or electronic communication is intentionally intercepted, disclosed, or used in violation of § 39-13-601 or title 40, chapter 6, part 3 may in a civil action recover from the person or entity which engaged in that violation the following relief:

(1) The greater of:

(A) The sum of the actual damages, including any damage to personal or business reputation or relationships, suffered by the plaintiff and any profits made by the violator as a result of the violation; or

(B) Statutory damages of one hundred dollars ($100) a day for each day of violation or ten thousand dollars ($10,000), whichever is greater; and

(2) Punitive damages; and

(3) A reasonable attorney's fee and other litigation costs reasonably incurred.

Tenn. Code Ann. § 39-13-603 (1997).

On September 12, 2000, the trial court entered a consent order enjoining Fulliton from disclosing, publishing, using, or disseminating the contents of any unlawfully intercepted conversations involving Leslie and other persons. Fulliton was also enjoined from using the contents of any such conversation in connection with the divorce proceedings that were pending at that time. Fulliton later filed a motion pursuant to Rule 14 of the Tennessee Rules of Civil Procedure to include Leslie as a third-party defendant. The ruling on that motion was reserved until the conclusion of the trial.

The bench trial was held on February 5, 2001. Robinson attended the trial but did not testify. In Fulliton's testimony, he denied recording the conversation at issue between Leslie and her brother Robinson. He admitted that he had planted a device to record telephone conversations at Leslie's

home, but claimed that Leslie knew her telephones were tapped. He explained that he recorded Leslie's conversations because she had suicidal tendencies, and he wanted to be able to prove her emotional instability in any potential divorce proceeding. Leslie testified that she was unaware that Fulliton was recording her phone conversations. She said that on January 17, 2000, she went to Fulliton's office, which she and Fulliton had previously shared,[1] and took out of his desk some tapes. The tapes had several telephone conversations recorded on them, including the conversation between Leslie and Robinson. In that conversation, Leslie stated, Robinson offered to give her a loan to help her out financially. Leslie testified that in March 2000 in the divorce proceedings between her and Fulliton, Fulliton's lawyer told the trial judge that Leslie had the ability to borrow money from family members to help maintain financial stability. Leslie asserted that this was an allusion to the information in the conversation between Leslie and Robinson.

At the conclusion of the proof, the trial court determined that Robinson did not consent to the recording of his conversation with Leslie, and that Leslie had no knowledge that her conversation was being intercepted by Fulliton. The trial court also found that Fulliton disclosed the contents of the conversation to his divorce attorney, who utilized the information during the divorce proceedings. The court concluded that Fulliton had violated Tennessee Code Annotated § 39-16-601 by intercepting the conversation and by disclosing the contents of it to his divorce lawyer. The trial court also ruled on Fulliton's motion to amend his answer to allege a third-party claim against his estranged wife. The trial judge denied Fulliton's motion, finding that he was guilty of unclean hands and concluding that there was no "right or remedy under the statute that [Fulliton] would have against [Leslie]." Robinson's lawsuit sought damages from Fulliton, but the trial court noted that there was no proof that Robinson had sustained any actual damages. In lieu of actual damages, the trial court determined that an award of $500, in addition to attorney's fees and costs, would be appropriate. Counsel for the plaintiff challenged the trial court's award of nominal damages:

[COUNSEL]: Your Honor, under the statute, the [plaintiff]'s entitled to a penalty sum of $10,000.

THE COURT: Up to. Let me take a look at that statute.

[COUNSEL]: No, I think it's $10,000 or $100 a day or actual damages, whichever is greater. . . .

THE COURT: I think it's up to $10,000. It doesn't say it has to be $10,000.

[COUNSEL]: Well, let me see.

THE COURT: Let's take a look at it. . . . Well, the greater of. Actual damages, I don't find that there's any actual damages. As to the statutory damage of $100 a day for each day of the violation, I don't know exactly how many days there was a

---

[1]Both Fulliton and Leslie practice in the field of psychology.

-3-

violation. I've given $500. . . . The bottom line is this: I[t] should be proportional in the damages. There's no question that this was a case that was appropriate to proceed upon in the unwillingness obviously of the defendant to admit his responsibility. He has obviously failed to do that along the way, because I have no reason to doubt that since today he continues to give this Court a balderdash story.

However, the sense of proportionality is, in this Court's opinion, this plaintiff, in terms of what this plaintiff should walk away with in terms of actual damages and/or compensation for that period of time, I'm comfortable with that.

Thus, the trial court found that it had discretion under the statute to award nominal damages for a violation, in proportion to the defendant's conduct.

On April 25, 2001, Robinson filed a motion for the trial court to amend its findings to include additional damages for expenses incurred in bringing the lawsuit. The trial court conducted a hearing on Robinson's motion. At the hearing, Robinson submitted an affidavit outlining $2,938 in expenses he incurred in attending his deposition and the trial – including air fare[2] ($1,338.00), parking ($200.00), and seven days of lost wages ($1,400) – and asked that the court include that amount in the compensatory damage award. Robinson also submitted evidence of his attorney's fees and costs incurred in bringing the action, which were $18,046.32. At the conclusion of the hearing, the trial court granted Robinson's motion, increasing the compensatory damage award to $3,438 and awarding attorney's fees and costs of $18,046.32, resulting in a total award of $21,484.32. The trial court declined to award punitive damages. Finally, the temporary injunction was made permanent, and court costs were assessed against Fulliton. On July 5, 2001, the trial court entered a written order consistent with its oral ruling. Robinson now appeals that order, and Fulliton has filed a cross-appeal.

On appeal, Robinson raises the sole issue of whether the trial court erred in awarding as compensatory damages an amount that is less than the statutory penalty of $10,000 under Tennessee Code Annotated § 39-13-603. Fulliton challenges the trial court's damage award as well, arguing that the court should not have awarded compensatory damages at all, in light of its finding that Robinson suffered no injury. Fulliton argues that the statutory scheme does not give the trial court the authority to award "nominal" damages for a violation. Furthermore, Fulliton argues, the trial court erred in awarding attorney's fees because such fees should not be awarded to a prevailing plaintiff who receives only nominal damages.[3]

---

[2]Robinson lives in Dallas, Texas, and traveled to Memphis for his deposition and trial.

[3]Fulliton argues in his brief that the trial court erred in denying his motion to add Leslie as a third-party defendant. Fulliton alleges that Leslie should be found liable to him for violating the Tennessee wiretapping statute because she unlawfully entered his office and took the illegal tapes (i.e., electronic communications) from him. Assuming arguendo the truth of the allegation, it would not establish that Leslie was liable "to [Fulliton] for all or part of [Robinson's] claim against the [Fulliton]." Tenn. R. Civ. P. 14. Further, there is no basis for considering comparative

(continued...)

In reviewing a bench trial on appeal, the trial court's factual findings are reviewed de novo with a presumption that the findings are correct unless the evidence preponderates otherwise. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); Tenn. R. App. P. 13(d). Issues of law are reviewed de novo with no presumption of correctness. *State v. Levandowski*, 955 S.W.2d 603-04 (Tenn. 1997). In this case the issues involve the interpretation of Tennessee Code Annotated § 39-13-603. "The search for the meaning of statutory language is a judicial function. . . . Statutory construction and the application of the statute to particular facts present legal questions." *State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear Eagle*, 63 S.W.3d 734, 754 (Tenn. Ct. App. 2001) (citations omitted); *see also Wilkins v. Kellogg Co.*, 48 S.W.3d 148, 151 (Tenn. 2001) (stating that issues of statutory interpretation are reviewed should be reviewed de novo by the reviewing court). Therefore, the trial court's conclusions regarding statutory interpretation are reviewed de novo, with no presumption of correctness.

We first address Robinson's argument that the trial court erred in awarding compensatory damages in an amount less than the $10,000 penalty. Robinson argues that the statute states clearly that a plaintiff in a civil action may recover "the greater of" the sum of actual damages or statutory damages.[4] Statutory damages are $100 a day for each violation or $10,000, whichever is greater. Only one telephonic interception is at issue in this case, which would compute to $100 under the $100-per-day formula. Thus, statutory damages would be the greater amount, $10,000. Because the statutory damages of $10,000 are greater than the $3,438 in actual damages, Robinson argues, the trial court violated the plain terms of the statute in awarding the lesser amount. In response, Fulliton insists that *any* award of damages was erroneous under the circumstances.

In interpreting the Wiretapping Act, we must examine first how damages are calculated if a violation of the statute is found. Thereafter, we must determine whether the court has discretion under the statute to award no damages in a case in which a violation is established but there are no actual damages. This presents an issue of first impression in interpreting Tennessee's Wiretapping Act.

First we consider how damages are calculated under the statute. The trial court found, and Robinson does not dispute, that Robinson incurred no actual damages as a result of Fulliton's wiretapping. The trial court, however, awarded Robinson nominal damages in the amount of $500, plus the expenses he incurred in pursuing the lawsuit, plus attorney's fees and costs. The statute states clearly that the plaintiff may recover "[t]he greater of" actual damages, which were found to

---

[3] (...continued)
fault, since the trial court found that Leslie did not know that her conversations were being recorded. Therefore, the trial court did not err in denying Fulliton's motion to add Leslie as a third-party defendant.

[4] Tennessee Code Annotated § 40-6-303(1) defines the term "actual damages":

"Actual damages" means damages given as compensation; damages given as an equivalent for the injury done; damages in satisfaction of, or in recompense for, loss or injury sustained; those damages awarded to a person as compensation, indemnity, or restitution for harm sustained by the person.

be zero, or statutory damages, here $10,000. In statutory construction, if the statute is unambiguous, we must follow the plain and ordinary meaning of the statute without applying other statutory rules of construction. *See Kradel v. Piper Indus., Inc.*, 60 S.W.3d 744, 749 (Tenn. 2001); *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802-03 (Tenn. 2000); *National Gas Distribs., Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). We are "not at liberty to depart from the words of [a] statute." *Gleaves*, 15 S.W.3d at 803. Rather, we "must 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" *Id.* (quoting *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)).

In this case, the plain language of the statute states that Robinson may recover either his actual damages or the statutory damages, which is greater, but does not provide for an award of nominal damages as was done in this case. Therefore, if damages in this case are awarded at all, they must be awarded in the amount of $10,000, the statutory damages.

The question then becomes whether the trial court has the discretion under section 39-13-603(a)(1) to award no statutory damages, if there are no actual damages and the trial court concludes that an award of the $10,000 statutory damages is inappropriate. This issue hinges on the interpretation of the statute's provision that a plaintiff "*may*" recover either actual damages or the statutory damages, whichever is greater. Fulliton argues that in a case such as this, where there was a single infraction of the statute and no actual damages, the trial court should have the discretion not to award damages. He notes that the language in section 39-13-603 is permissive, not mandatory, providing that an aggrieved person "may" recover certain relief. In support, Fulliton cites federal decisions in which a similarly worded federal statute has been interpreted as granting such discretion. *See* 18 U.S.C. § 2520. Fulliton argues that this Court should follow the majority of federal courts, which have determined that use of the word "may" in the statute shows a legislative intent to grant federal trial courts discretion to deny damages in an appropriate case.

Robinson, on the other hand, argues that the use of the word "may" in the Tennessee statute, given the context of the statute and its legislative purpose, actually means "shall" and cannot be construed to give the trial court the discretion to deny an award of damages when a statutory violation has been established. Robinson acknowledges that most federal courts interpreting the federal statute take an "all or nothing at all" approach, permitting a district court to deny damages in an appropriate case. He argues, however, that the reasoning employed by the majority of the federal courts is contrary to the stated legislative purposes in the Tennessee Wiretapping and Electronic Surveillance Act of 1994. *See* Tenn. Code Ann. § 40-6-302 (1997).

In interpreting the Tennessee statute, it is appropriate to consider the reasoning of federal courts that have interpreted a comparable federal statute. *See Summers Hardware & Supply Co. v. Steele*, 794 S.W.2d 358, 362 (Tenn. 1990) (opining that "[c]ases from other jurisdictions, including federal cases, are always instructive, sometimes persuasive, but never controlling in our decisions"). The federal statute comparable to Tennessee's Wiretapping Act is 18 U.S.C. § 2520, which reads as follows:

§ 2520. Recovery of civil damages authorized

(a) In general.--Except as provided in section 2511(2)(a)(ii), any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter *may* in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate.

(b) Relief.--In an action under this section, appropriate relief includes--

> (1) such preliminary and other equitable or declaratory relief as may be appropriate;
> (2) damages under subsection (c) and punitive damages in appropriate cases; and
> (3) a reasonable attorney's fee and other litigation costs reasonably incurred.

(c) Computation of damages.--

> (1) In an action under this section, if the conduct in violation of this chapter is the private viewing of a private satellite video communication that is not scrambled or encrypted or if the communication is a radio communication that is transmitted on frequencies allocated under subpart D of part 74 of the rules of the Federal Communications Commission that is not scrambled or encrypted and the conduct is not for a tortious or illegal purpose or for purposes of direct or indirect commercial advantage or private commercial gain, then the court shall assess damages as follows:

>> (A) If the person who engaged in that conduct has not previously been enjoined under section 2511(5) and has not been found liable in a prior civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $50 and not more than $500.

>> (B) If, on one prior occasion, the person who engaged in that conduct has been enjoined under section 2511(5) or has been found liable in a civil action under this section, the court shall assess the greater of the sum of actual damages suffered by the plaintiff, or statutory damages of not less than $100 and not more than $1000.

> (2) In any other action under this section, the court *may* assess as damages whichever is the greater of--

> (A) the sum of the actual damages suffered by the plaintiff and any profits made by the violation as a result of the violation; or

(B) statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000.

18 U.S.C. § 2520 (emphasis added). Though not identical to the Tennessee statute, the federal statute uses similar permissive language, providing that a wiretapping victim "*may* in a civil action recover" appropriate relief, and that in certain cases the "court *may* assess as damages" the greater of actual damages or statutory damages. This is comparable to Tennessee's Act, which states that an aggrieved person "*may* in a civil action recover" the greater of actual damages or statutory damages.

The majority of federal courts interpreting section 2520 have determined that district courts have the discretion to refuse to award damages in an appropriate situation. *See Dorris v. Absher*, 179 F.3d 420, 429-30 (6th Cir. 1999); *Reynolds v. Spears*, 93 F.3d 428, 435 (8th Cir. 1996); *Nalley v. Nalley*, 53 F.3d 649, 653 (4th Cir 1995); *Schmidt v. Devino*, 206 F. Supp. 2d 301, 306-07 (D. Conn. 2001); *Goodspeed v. Harman*, 39 F. Supp. 2d 787, 791 (N.D. Tex. 1999); *Romano v. Terdik*, 939 F. Supp. 144, 149 (D. Conn. 1996); *Shaver v. Shaver*, 799 F. Supp. 576, 580 (E.D.N.C. 1992); *but see Rodgers v. Wood*, 910 F.2d 444, 448 (7th Cir. 1990) (determining, in a split decision, that Congress did not intend to grant discretion to a trial court to refuse to award statutory damages). For example, in *Reynolds v. Spears*, the district court declined to award damages under the statute where the defendant, a store owner, tape recorded telephone conversations of his employees because his store had been burgled and he believed it to have been an inside job. *Reynolds*, 93 F.3d at 431. The Eighth Circuit upheld the district court's determination that the statute conferred upon the court the discretion to deny such damages, and also concluded that it did not abuse its discretion in that case. *Id.* at 436. The appellate court found it relevant that the store owner had consulted with a law enforcement official prior to making the recordings, and that the officer told him, albeit incorrectly, that recording the conversations was appropriate. *Id.* The *Reynolds* court also found it significant that there was "no evidence of widespread disclosure" and no evidence of any actual damages arising from the violation. *Id.*; *see also Nalley*, 53 F.3d at 653-54 (holding that district court properly exercised discretion to deny damages for violation of the wiretapping statute when the violation was de minimus, and it resulted in no financial loss to the plaintiffs and no profit to the defendant).

In concluding that federal district courts have the discretion not to award damages under § 2520, the majority of federal courts relied on several factors. First, these courts cited the general rule that "[t]he use of the term 'may' in a statute is generally construed as a permissive rather than as mandatory." *Dorris*, 179 F.3d at 429; *see also Reynolds*, 93 F.3d at 434. These courts also described as "crucial" the fact that Congress had changed the verb from "shall" to "may" when it amended the federal statute in 1986. *See Dorris*, 179 F.3d at 429; *Reynolds*, 93 F.3d at 435; *Nalley*, 53 F.3d at 651-652. The change in verb form was significant because "[w]hen Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect." *Reynolds*, 93 F.3d at 434 (quoting *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995)); *Nalley*, 93 F.3d at 652 (stating that, when Congress changes the wording in a statute, the court "can only conclude that Congress intended the amended statute to have a different meaning"). Several of these courts also noted that

the federal statute contained contrasting verb forms *within* its provisions. In subsection (c)(1), the federal statute indicates that the trial court "shall" assess certain damages for some cases involving private satellite video or radio communications. In subsection (c)(2), however, regarding "any other action," the statute provides that a court "may" assess damages according to the stated formula. *Nalley*, 53 F.3d at 651 (holding that discretion must be implied in subsection (c)(2) in order "[t]o give this contrasting language meaning"); *Reynolds*, 93 F.3d at 435 (same).

As with the federal statute, the Tennessee Wiretapping Act employs the term "may" in the civil damages provision, which ordinarily indicates permissive, rather than mandatory, action. *See, e.g., Creative Kitchens & Interiors, Inc. v. Bale*, No. 03A01-9611-CH-00379, 1997 WL 527281, at *5 (Tenn. Ct. App. Aug. 26, 1997) (noting that the availability of treble damages for a violation of the Consumer Protection Act is permissive, not mandatory, because of the use of the word "may" rather than "shall"). The Tennessee Act, however, was promulgated in 1994, and the verb "may" in the civil damages provisions has remained unchanged since the statute was enacted. *See* Tenn. Code Ann. § 39-13-603. Also, comparing it with the federal statute, the Tennessee statute does not have contrasting verb forms within the civil damages provision; it provides only that an aggrieved party "may" recover the stated damages in a civil action.

Thus, there are substantial similarities between the federal wiretapping statute and Tennessee's Wiretapping Act, and the federal decisions, finding that the federal district courts have the discretion not to award damages, are instructive. There are, however, significant differences between the federal statute and Tennessee Act. Moreover, in some situations, the permissive "may" is given mandatory significance. *See Baker v. Seal*, 694 S.W.2d 948, 951 (Tenn. Ct. App. 1984). In determining whether "may" should be interpreted as being mandatory, "the prime object is to ascertain the legislative intent, from a consideration of the entire statute, its nature, its object, and the consequences that would result from construing it one way or the other." *Id.* (quoting *Stiner v. Powells Valley Hardware Co.*, 75 S.W.2d 406 (Tenn. 1934)). Therefore, we must look further to determine the correct interpretation of Tennessee Wiretapping Act.

"When the words of a statute are ambiguous or when it is just not clear what the legislature had in mind, courts may look beyond a statute's text for reliable guides to the statute's meaning." *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997). Some "reliable guides" include the statute's historical background, the conditions giving rise to the statute, circumstances contemporaneous with the statute's enactment, and the statute's legislative history. *Id.* The statute's stated purpose must also be considered in determining legislative intent. *See City of Lenoir City v. State ex rel. City of Loudon*, 571 S.W.2d 297, 299 (Tenn. 1978). In construing the statute, "we must avoid inquiring into the reasonableness of the statute or substituting our own policy judgments for those of the General Assembly." *Lawrence v. Rawlins*, No. M1997-00223-COA-R3-CV, 2001 WL 76266, at *4 (Tenn. Ct. App. Jan. 30, 2001); *Baker v. State, ex rel. Baker*, No. 01A01-9509-CV-00428, 1997 WL 749452, at *4 (Tenn. Ct. App. Dec. 5, 1997) ("It is not our preogative to inquire into the reasonableness of a statute or to [substitute] our policy judgments for those of the legislature."). The statute should be construed in a manner that neither limits nor extends the meaning intended by the legislature. *Gleaves*, 15 S.W.3d at 802-03.

The legislative purpose of Tennessee's Wiretapping Act is set out in Tennessee Code Annotated § 40-6-302:

> **Legislative purpose.** – (a) In order to protect the privacy of wire, oral, and electronic communications, to protect the integrity of court and administrative proceedings, to define, on a uniform basis, the circumstances under which a district attorney general may apply to a court of competent jurisdiction for the interception and use of wire, oral, and electronic communications, to define the circumstances under which a judge in a court of competent jurisdiction may authorize the interception and use of wire, oral and electronic communications, and to prohibit any unauthorized interception or use of such communications, it is necessary for the general assembly to define the circumstances and conditions under which the interception of wire, oral and electronic communications may be lawful. In defining these circumstances, the general assembly seeks to strike a balance between an individual's right to privacy and society's legitimate concern in being protected from criminal activity.
>
> (b) In carrying out illegal activities, criminals often make extensive use of wire, oral and electronic communications. The lawful interception of these communications is an indispensable aid to investigative and law enforcement officials in obtaining evidence of illegal activities. Likewise, it is necessary for the general assembly to safeguard the privacy of innocent persons. Through this part and §§ 39-13-601--39-13-603, the general assembly seeks to prohibit the unauthorized interception of wire, oral and electronic communications and to prohibit the use of illegally obtained wire, oral and electronic communications as evidence in courts and administrative proceedings. The interception of wire, oral or electronic communications, therefore, when no party to the communications has consented to the interception, should be allowed only under compelling circumstances when authorized and supervised by a court of competent jurisdiction and upon a finding of probable cause. Court authorization and supervision ensures that the interception is made only in narrowly defined circumstances and that the information obtained will not be misused. The privacy rights of Tennessee citizens are further protected by limiting the interception of wire, oral, and electronic communications to certain major types of felonies under the Tennessee Code Annotated.

Tenn. Code Ann. § 40-6-302 (1997). Thus, in the Act's stated purpose, the legislature recognizes that the lawful interception of some electronic communications is "indispensable" to the investigation of illegal activities, but also recognizes that an individual's right to privacy must be safeguarded from unjustified intrusion. The Act was intended "to strike a balance between an individual's right to privacy and society's legitimate concern in being protected from criminal activity." *Id.*

The Wiretapping Act also includes a provision addressing construction of the statute in the event that any provision is deemed ambiguous:

> **Construction of ambiguous provisions.** – Any ambiguity in this part or §§ 39-13-601 – 39-13-603 shall be resolved in favor of the aggrieved party and against the state.

Tenn. Code Ann. § 40-6-310 (1997). Thus, in striking the balance, section 40-6-310 indicates an intent that ambiguities be resolved in favor of protecting the privacy interest of aggrieved individuals, at least in situations in which the wiretapping is done by the State or other law enforcement authorities.

Therefore the stated purpose of the Act has some indication of legislative intent, but does not address the issue of whether "may" in section 39-13-603 should be interpreted as permissive or mandatory, that is, whether the legislature intended for a trial judge to have the discretion to refrain from awarding damages even where there has been a violation of the statute in an appropriate circumstance. Indeed, it is not difficult to envision situations in which an individual could have a compelling reason for wiretapping.[5] Thus, we look to the legislative history of the Act in an effort to glean the legislature's intent.

While the legislative history does not directly address the issue presented in this case, it is voluminous[6] and clearly indicates the overall legislative intent behind the legislation. In the discussions pertaining to section 39-13-603, the sponsor of the bill was asked by another legislator, Representative Frank Buck, about whether the Act could be interpreted in a restrictive manner, limiting the damages to be awarded, stating that he was "troubled by certain areas":

> On p. 35, "except as otherwise provided in section 2(b), any aggrieved person . . . may recover . . . such relief as follows: [reading statute]." What troubles me about that is that I'm afraid that may be interpreted as [being] limited to this and this situation. . . . I don't want to, by this language, if somebody abuses it to *limit* the damages. Now you understand where I'm coming from?
>
> [Representative Roy Herron]: I do, Mr. Chairman. . . . If you've got your option between actual or the statutory damages, so that it wouldn't be de minimus. In addition to that you get punitive damages; in addition to that you get attorney's fees and other litigation costs . . . . The purpose is essentially . . . if somebody violated

---

[5] For example, a parent might decide to wiretap his own home telephone to find out if a caregiver for his child is engaging in illegal or immoral activity while caring for the child.

[6] In researching the legislative intent behind the promulgation of section 39-13-603, this Court reviewed the thirteen cassette tapes of legislative discussions surrounding the relevant provision in the Wiretapping Act. Portions of those tapes, provided to us by the Legislative History department of the Tennessee State Library and Archives in Nashville, Tennessee, were transcribed for our use. Those transcripts will be cited herein as *Wiretapping and Electronic Surveillance Act of 1994*: *Hearing on H.B. 2153 Before the Joint Session of the Judiciary Committee*, 1994 Gen. Assembly (Tenn. 1994), or, as a short citation, *Joint Judiciary Committee Hearings*.

the law I want them to pay significant damages. I want it to be a significant deterrent to somebody [else] violating the law.

*Wiretapping and Electronic Surveillance Act*: *Hearing on H.B. 2153 Before the Joint Session of the Judiciary Committee*, 1994 Gen. Assembly (Tenn. March 23, 1994). Thus the sponsor of the bill, Representative Herron, emphasized that the damages were not intended to be nominal or "de minimus," describing the option to be "between actual or the statutory damages. . . ." Representative Buck recounted an incident of wiretapping:

> Another case that I mentioned was the circumstance where the husband has been away for several days - and this literally happened - he calls his wife in a rather playful mood and laughs and says what all he's going to do, and the neighbor next door is listening on one of these things. Now thank God they didn't tape record . . . every word, but that was a great embarrassment to that woman. . . . I mean there were some very hurt feelings, and I'm talking about a very serious domestic situation.
>
> I would state for the record that . . . the intention here is to absolutely allow punitive damages in those situations and if actual damages are not greater than the statutory damages . . . then they would get $10,000 plus punitives plus attorney's fees plus litigation costs.

*Id.* The sponsor of the Act, Representative Roy Herron, describing the penalty provisions, stated "First of all there is the monetary damages, a civil penalty if you would; it is a minimum of $10,000 to any person whose conversations are tapped without the proper court order. . . ." Representative Herron stated further:

> What this legislation does for those of us who, like you and I, are concerned about individual privacy. What this legislation does is put into law tough, severe penalties. A minimum of $10,000 fine is the civil penalty . . . . [I]f [the intercepted information] becomes disseminated that person is subject to the $10,000 minimum liquidated damages. It can be more than that if you can show actual damages. [Y]ou can get attorney's fees, you can get punitive damages.

*Joint Judiciary Committee Hearings* (April 11, 1994). Later, Representative Buck stated that the civil damages provision, along with the criminal sanctions, was meant to "absolutely be a hammer on anybody who would divulge any part of" unlawfully intercepted conversations. *Id.* "[T]he floor is $10,000, plus punitive damages, plus attorney's fees and litigation costs." *Id.* Notably, there was no discussion regarding a situation in which a violation occurred but the imposition of damages may *not* be appropriate. The discussion centered around the $10,000 penalty being a statutory "minimum."

While the legislative history does not state directly that the word "may" in section 39-13-603(a) is intended to be mandatory rather than permissive, the overall tenor of the discussion

strongly supports such an interpretation. In light of this evidence of legislative intent, along with the purpose set out in section 40-6-302, we must conclude that Tennessee's Wiretapping Act does not give the trial court the discretion to refuse an award of damages if a violation of the Act has been proven. Thus, in the case at bar, since the actual damages were less than the statutory damages of $10,000, the trial court was required to award Robinson the $10,000 statutory damages at a minimum. This holding pretermits all other issues raised on appeal. Because this holding may affect the trial court's award of other damages, we remand the cause to the trial court for reconsideration of the entire award, in the discretion of the trial court.

Accordingly, we reverse the trial court's damage award and remand for further proceedings not inconsistent with this Opinion. Costs are to be taxed to the appellee, William Fulliton, for which execution may issue, if necessary.

_____

HOLLY KIRBY LILLARD, JUDGE