# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 4, 2002 Session

## PATRICIA CONLEY, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF MARTHA STINSON, DECEASED v. STATE OF TENNESSEE

**Direct Appeal from the Tennessee Claims Commission**
**No. 20200368      W. R. Baker, Commissioner**

---

**No. M2002-00813-COA-R3-CV - Filed May 27, 2003**

---

This is an appeal from the Claims Commission.  The Claims Commissioner dismissed both claims alleged by Ms. Conley on the motion of the State.  Additionally, the Claims Commissioner found that the State is not a governmental entity for the purposes of Tennessee Code Annotated section 20-1-119(g).  For the following reasons, we reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Claims Commission Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, JUDGE, joined.

Gene Hallworth, Columbia, TN, for Appellant

Paul G. Summers, Attorney General & Reporter, Michael E. Moore, Solicitor General, Martha A. Campbell, Senior Counsel, Nashville, TN, for Appellee

## OPINION

### Facts and Procedural History

Martha Stinson, ("Ms. Stinson") the deceased, was a resident of Centerville Health Care Center ("the nursing home") on January 1, 2000. Another resident severely beat her, and she subsequently died. Patricia Conley ("Ms. Conley"), Ms. Stinson's daughter, filed suit against the nursing home alleging that its negligent supervision of James Johnson, who had been diagnosed with agitated psychosis, led to the death of Ms. Stinson. On August 24, 2001, the nursing home alleged the comparative fault of the State of Tennessee ("the State") in an amended answer. The nursing home claimed that it had relied on the State when it placed James Johnson in its general population

because the State had evaluated James Johnson in its pre-admission screening and annual resident review (PASARR).

Ms. Conley, pursuant to Tenn. Code Ann. section 20-1-119, filed suit against the State in the Claims Commission on August 31, 2001. Ms. Conley alleged medical malpractice or negligent care, custody, and control of persons under Tenn. Code. Ann. section 9-8-307(a)(1)(D) and (E). The State filed a motion to dismiss pursuant to Tennessee Rule of Civil Procedure 12.02(6) alleging Ms. Conley failed to state a claim on which relief could be granted. (R. p. 6) In support of its motion, the State claimed that it did not have any professional relationship with Ms. Stinson, as required by those statutes, and thus there was no waiver of sovereign immunity. The State also asserted that the claim was barred by the statute of limitations because the tolling provision of Tenn. Code Ann. section 20-1-119(g) covers "governmental entities" and that the State is not a governmental entity.

The Claims Commissioner found that "the facts of this claim are not included in any of the Tennessee statutory waivers of sovereign immunity" and that the State was not a governmental entity for the purposes of Tenn. Code. Ann. section 20-1-119(g) because "it is well established in Tennessee decisions and statutes that legislation does not apply to the State unless the State is referred to in it specifically . . . . A general reference like 'governmental entities' is not sufficient . . . ." Ms. Conley timely filed an appeal to this court and presents the following issues for our review:

> I. Whether the negligent actions of the State, in releasing a dangerous, violent psychotic patient into a vulnerable nursing home population, give rise to tort liability under Tenn. Code. Ann. § 9-8-307.
> II. Whether the Plaintiff's claims against the State are timely, pursuant to the tolling provisions of Tenn. Code Ann. § 20-1-119.

## Standard of Review

Our standard of review on a motion to dismiss is *de novo* with no presumption of correctness because our inquiry is purely a question of law. Carvell v. Bottoms, 900 S.W.2d 23, 26 (Tenn. 1995). In considering a motion to dismiss, we are required to take the allegations of the complaint as true, and to construe the allegations liberally in favor of the plaintiff. Pemberton v. American Distilled Spirits Co., 664 S.W.2d 690, 691 (Tenn. 1984). A complaint should be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Id.

## Law and Analysis

Ms. Conley has brings her claims under Tennessee Code Annotated sections 9-8-307(a)(1)(D) and 9-8-307(a)(1)(E). These sections state as follows:

> (a)(1) The commission or each commissioner sitting individually has exclusive jurisdiction to determine all monetary claims against the state based on the acts or

omissions of "state employees," as defined in § 8-42-101(3), falling within one (1) or more of the following categories:

(D) Legal or medical malpractice by a state employee; provided, that the state employee has a professional/client relationship with the claimant;

(E) Negligent care, custody and control of persons;

## Medical Malpractice Under T.C.A. § 9-8-307(a)(1)(D)

Ms. Conley alleged that the State Department of Mental Health and Mental Retardation committed medical malpractice when it screened Mr. Johnson pursuant to its Pre-Admissions Screening and Annual Resident Review (PASARR) program. This screening is required before a patient with mental illness or mental retardation falling under the program is admitted to a nursing home. The program is outlined in Tenn. Comp. R. & Regs. 1200-13-1-.23.[1] Ms. Conley contends that the State committed medical malpractice when it "ignored Mr. Johnson's prior history of violent psychosis and . . . failed to evaluate the degree [of] Mr. Johnson's mental illness and propensity for violence" during its examination of Mr. Johnson pursuant to the PASARR program before his admission to the nursing home. The PASARR program does contain the following:

(c) Any individual for whom there is a positive response for any of the identification evaluative criteria for mental retardation of mental illness may not be admitted to or

---

[1] This Rule reads in part:

1200-13-1-.23 NURSING HOME PREADMISSION SCREENINGS FOR MENTAL ILLNESS AND MENTAL RETARDATION

(1) The following definitions shall apply for interpretation of this rule.

(a) Identification Screen (Level 1) - The identification screen is to determine which nursing facility applicants or residents have mental illness or mental retardation and are subject to preadmission screening/annual resident review (PASARR). Individuals with a supportable primary diagnosis of Alzheimer's disease or dementia will also be detected through the identification screen. Nursing facilities are responsible for ensuring that all applicants receive a Level I identification screen.

(b) Preadmission Screening/Annual Resident Review (Level II) - The process whereby a determination is made about whether the individual requires the level of services provided by a nursing facility or another type of facility and, if so, whether the individual requires specialized services. These reviews shall be the responsibility of the State Department or Mental Health and Mental Retardation.

continue to reside in a Medicaid-certified nursing facility without being determined appropriate for nursing facility placement through the PASARR process (Level II). Tenn. Comp. R. & Regs. 1200-13-1-.23

The State contends that under the specific language of the statute that reads "provided, that the state employee has a professional/client relationship with the claimant," precludes liability because the claimant, Ms. Conley, had no relationship with the State. The Claims Commissioner agreed with the State finding since there was no professional relationship between Ms. Conley and the State, there was no jurisdiction in the Claims Commission.

Ms. Conley argues that Tennessee Code Annotated section 9-8-307(a)(1) must be read in conjunction with Tennessee Code Annotated section 9-8-307(c) which states that "determination of the state's liability in tort shall be based on the traditional tort concepts of duty and the reasonably prudent person's standard of care." Ms. Conley cites *Hembree v. State*, No. 01-A-01-9306-BC-00279, 1995 WL 50066 (Tenn. Ct. App. Feb. 8, 1995) ("The State could be liable for the negligence of its professional personnel to the same extent that liability could be imposed on private parties under similar facts."). Ms. Conley argues that the State did have a duty to her deceased under the "special relationship" theory enumerated in *Turner v. Jordan*, 957 S.W.2d 815 (Tenn. 1997). Ms. Conley's argument mirrors the reasoning of Judge Koch's opinion in *Hembree*.

In the *Hembree* case, a mental patient with a history of violent criminal behavior was involuntarily committed to the Middle Tennessee Mental Health Institute. *Hembree*, 1995 WL 50066 at * 1. The decision was made to allow this patient to participate in a vocational program "off campus" without supervision of the staff. *Id.* Subsequently, the patient entered an apartment in Clarksville and killed two people and seriously injured two others. *Id.* Although the families of the deceased brought an action against the State pursuant to Tennessee Code Annotated section 9-8-307(a)(1)(E) for negligent care, custody or control of the patient, the *Hembree* court stated:

> Claims for damages caused by the negligent release of involuntarily institutionalized persons with dangerous propensities are essentially actions for medical malpractice. *Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86, 93 (Kan. 1983); *Wofford v. Eastern State Hosp.*, 795 P.2d 516, 520 (Okla. 1990); *Sherk v. County of Dauphin*, 531 Pa. 515, 614 A.2d 226, 233 (Pa. 1992). Accordingly, claims of the sort involved in this case also state a claim under Tenn. Code Ann. 9-8-307(a)(1)(D) which authorizes claims against the State for "professional malpractice." The State could be liable for the negligence of its professional personnel to the same extent that liability could be imposed on private parties under similar facts. Tenn. Code Ann. 9-8-307(c), -307(d).

> Persons cannot be held liable for negligence unless they owe a duty of care to the injured party and have breached that duty. Normally, persons have no duty to protect others from the dangerous conduct of third parties. Restatement (Second) of Torts 314 (1964). However, the duty can arise when the person has a special relationship

-4-

either with the person who is the source of the danger or with the person or persons foreseeably at risk. *Bradshaw v. Daniel*, 854 S.W.2d 865, 871 (Tenn. 1993); *Nichols v. Atnip*, 844 S.W.2d 655, 661 (Tenn. Ct. App. 1992); Restatement (Second) of Torts 315 (1964).

One circumstance giving rise to a special relationship involves persons or entities who control other dangerous persons. Restatement (Second) of Torts 319 provides:

One who takes charge of a third person whom he [or she] knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him [or her] from doing such harm.

*Hembree*, 1995 WL 50066 at *4-5.

As stated above, we are examining Ms. Conley's claim in light of the State's motion to dismiss. We are not examining the merits. We are examining Ms. Conley's allegations to see if it appears beyond a doubt that there are no set of facts that Ms. Conley could prove upon which she would be entitled to relief. The State maintains that there is not because Ms. Conley did not allege a professional relationship between her deceased and the State. However, looking at Ms. Conley's allegations through the lens of this very generous standard, we must reverse the Claims Commissioner. Ms. Conley has alleged that there was medical malpractice in the decision that the nursing home was a suitable place for Mr. Johnson to be housed. Thus, because she has alleged a claim under the special relationship theory set out in *Jordan* and *Hembree*, there is in this case a set of facts upon which Ms. Conley should be allowed to proceed past a motion to dismiss.

## Negligent Care, Custody, or Control Under T.C.A. § 9-8-307(a)(1)(E)

Ms. Conley also alleges that the State was negligent in its "care, custody and control" of Mr. Johnson. Ms. Conley argues that because under the PASARR program a mentally ill person "may not be admitted to or continue to reside in a Medicaid-certified nursing facility without being determined appropriate for nursing facility placement through the PASARR process (Level II)," Tenn. Comp. R. & Regs. 1200-13-1-.23, and because the PASARR patient review process "shall be the responsibility of the State Department or Mental Health and Mental Retardation," *Id.*, that the State was negligent in its control of Mr. Johnson. Ms. Conley bases her argument on *Stewart v. State*, 33 S.W.3d 785 (Tenn. 2000) and *Hembree v. State, supra.* Ms. Conley correctly notes, citing *Stewart*, that Tennessee Code Annotated section 9-8-307(a)(1)(E) can be read disjunctively thus providing a claim for negligent control absent care or custody. Ms. Conley further cites *Stewart* for the proposition that "[i]t is well established that liability may be imposed for injuries to third persons caused by those persons for whom the state has responsibility." *Stewart*, 33 S.W.3d at 792.

The Sate argues that it "did not make any release decision with regard to Mr. Johnson, . . . . [it] merely determined that the Life Care nursing home facility could provide the appropriate level

of service for Mr. Johnson." The State further argues that it "never had control over Mr. Johnson, did not have a legal duty to control him, and did not assume at legal duty to control him."

Again, we are not looking at the merits of this case. We are determining, beyond a reasonable doubt, if there is no set of facts to support a claim upon which Ms. Conley can be given relief. The State did have a role in admitting Mr. Johnson to the Life Care nursing facility and according to the PASARR program could have found based on the state of Mr. Johnson's mental health and history that the nursing facility was not an appropriate environment for him. We reverse the Claims Commissioner because it cannot be said beyond a reasonable doubt that this particular set of facts alleged by Ms. Conley cannot support a claim for negligent control when held to the generous standard for a motion to dismiss.

### Statue of Limitations and Tenn. Code Ann. § 20-1-119

Finally, the State argues that Ms. Conley's claim is barred by the applicable statute of limitations and is not saved by Tennessee Code Annotated section 20-1-119. It is uncontested that Ms. Conley's action was filed after the one year of statute of limitations had run, and that it was filed pursuant to the savings provision contained in section 20-1-119 within the ninety day period prescribed therein after the comparative fault of the State was alleged in the nursing home's answer. The State contends that this statute does not apply to the State because the State of Tennessee is not expressly mentioned in the statute. Ms. Conley argues that section (g) of the statute which states that " [n]otwithstanding any provision of law to the contrary, this section applies to suits involving governmental entities" encompasses the State. The State replies that it is not included term "governmental entities." The State points to the definition of governmental entity found at Tennessee Code Annotated section 29-20-102 which states:

> As used in this chapter, unless the context otherwise requires:
> . . . .
>
> 3) "Governmental entity" means any political subdivision of the state of Tennessee including, but not limited to, any municipality, metropolitan government, county, utility district, school district, nonprofit volunteer fire department receiving funds appropriated by a county legislative body or a legislative body of a municipality, human resource agency, public building authority, and development district created and existing pursuant to the constitution and laws of Tennessee, or any instrumentality of government created by any one (1) or more of the herein named local governmental entities or by an act of the general assembly;

The State argues that the exclusion of the State from this definition means that it is also excluded from the term "governmental entities" in section 20-1-119(g) and, thus, that the statute is unambiguous. On the other hand, Ms. Conley, citing *State v. Walls*, 62 S.W.3d 119, 121 (Tenn. 2001) and *State v. McKnight*, 51 S.W.3d 559, 566 (Tenn. 2001), asserts that the term "governmental entities" is "unidentified, and that the statutory language is amenable to more than one meaning" and thus "the court may properly consider the entire statutory scheme in which the statue appears to ascertain the legislature's intent and purpose." Ms. Conley further points us to the principle that

statute's legislative history is a primary source in determining the proper construction of the statutory language. *Bowden v. Memphis Bd of Educ.*, 29 S.W.3d 462, 465 (Tenn. 2000).

Ms. Conley is in essence asserting that the term governmental entities is ambiguous and the State argues that it is not. We agree with Ms. Conley. We have recently held:

> When the words of a statute are ambiguous or when it is just not clear what the legislature had in mind, courts may look beyond a statute's text for reliable guides to the statute's meaning." *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn.Ct.App.1997). Some "reliable guides" include the statute's historical background, the conditions giving rise to the statute, circumstances contemporaneous with the statute's enactment, and the statute's legislative history. *Id.* The statute's stated purpose must also be considered in determining legislative intent. *See City of Lenoir City v. State ex rel. City of Loudon*, 571 S.W.2d 297, 299 (Tenn.1978). In construing the statute, "we must avoid inquiring into the reasonableness of the statute or substituting our own policy judgments for those of the General Assembly." *Lawrence v. Rawlins*, No. M1997-00223-COA-R3-CV, 2001 WL 76266, at *4 (Tenn.Ct.App. Jan. 30, 2001); *Baker v. State, ex rel. Baker*, No. 01A01-9509-CV-00428, 1997 WL 749452, at *4 (Tenn.Ct.App. Dec. 5, 1997) ("It is not our preogative to inquire into the reasonableness of a statute or to [substitute] our policy judgments for those of the legislature."). The statute should be construed in a manner that neither limits nor extends the meaning intended by the legislature. *Gleaves,* 15 S.W.3d at 802-03.

*Robinson v. Fulliton,* No. W2001-01753-COA-R3-CV, 2003 WL 346933, at *7 (Tenn. Ct. App. Feb. 14, 2003)

The legislative history of Tennessee Code Annotated section 20-1-119(g) explains the purpose of the addition of this subsection to the statute in 1999. The chairman of the House Judiciary Committee, Chairman Buck, explained the addition in the context of the adoption of comparative fault in Tennessee:

> When the defendant pleads [comparative fault of a third party], remember you have 90 days in which to, the plaintiff does, to bring in this third party. Apparently, because of the fact the government, either state or county or local government was never mentioned in that act, some appellate court has ruled that you can't bring the government in. So this just treats the government like everybody else. It says, you know, if the defendant pleads that the governmental entity is in fact the guilty party, then they shall be subject to the same rules of pleading as everybody else.

H.R. 1173, 101st Gen Assem., 1st Session (Tenn. May 4, 1999) (enacted).

And again: "There was a peculiar opinion saying [the savings statute] didn't apply to the government. This just treats the state and the governments and the cities just like everybody else. They play by the same rules everybody else does." H.R. 1173, 101st Gen Assem., 1st Session (Tenn. May 11, 1999) (enacted). In the Senate, there was a similar explanation by Senator Miller:

Miller: I would submit to you that the Code is inconsistent right now.  If you, Senator or a corporation or a limited partnership or any other entity other than a governmental entity were named by a defendant in your answer, as being partially responsible for some act, that was alleged to be the proximate cause of an injury, then the plaintiff would have 90 days to bring you in or that corporation in or that LLC in or whoever else, but not a city, a county, or the state.  And that's where the law is not uniform.

S.R. 1033 101st Gen Assem., 1st Session (Tenn. May 27, 1999) (enacted).

These comments by the legislators who sponsored this addition to section 20-1-119 of the Tennessee Code make it plain that it was their intent to include the State in their definition of "governmental entities."  Thus, we reverse the findings of the Claims Commissioner and remand.

## Conclusion

For the foregoing reasons, we reverse the judgment of the Claims Commissioner and remand for proceedings consistent with this opinion.  Costs on appeal are judged against the State of Tennessee for which execution may issue, if necessary.

_____

ALAN E. HIGHERS, JUDGE