IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 23, 2020 Session

FILED
04/03/2020
Clerk of the
Appellate Courts

# CHARLES HUDDLESTON HEATON, JR., ET AL.
# v. CATHERINE L. MATHES ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 3-526-16          Deborah C. Stevens, Judge**

_____

**No. E2019-00493-COA-R9-CV**

_____

The plaintiffs filed a health care liability action against a pharmacy and other medical defendants, claiming, *inter alia*, that the defendants failed to provide proper patient counseling and failed to warn of the risks associated with a prescription drug. The pharmacy defendants subsequently filed a motion to dismiss, asserting that the gravamen of the complaint against them was a products liability action rather than a health care liability action. The defendants further asserted that the "seller shield" defense found within the Tennessee Products Liability Act provided them with immunity from liability. The trial court denied the defendants' motion to dismiss, ruling that the complaint stated a health care liability action rather than a products liability action. The trial court subsequently granted the defendants' motion for permission to seek interlocutory appeal regarding whether the seller shield defense contained within the Tennessee Products Liability Act could be asserted when the plaintiffs' claim is made pursuant to the Tennessee Health Care Liability Act. Following our thorough consideration of the issue, we affirm the trial court's judgment, determining that the seller shield defense found in the Tennessee Products Liability Act is inapplicable to claims made under the Tennessee Health Care Liability Act.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and RICHARD H. DINKINS, J., joined.

John Knox Walkup and Andrew J. Pulliam, Nashville, Tennessee, for the appellants, Cigna Home Delivery Pharmacy; Tel-Drug, Inc.; Tel-Drug of Pennsylvania, LLC; and David Scott Dessender.

Leslie A. Muse and Grant E. Mitchell, Knoxville, Tennessee, for the appellees, Charles Huddleston Heaton, Jr., and Miki Heaton.

**OPINION**

I. Factual and Procedural History

On November 28, 2016, the plaintiffs, Charles Huddleston Heaton, Jr., and Miki Heaton, filed a complaint in the Knox County Circuit Court ("trial court") against Dr. Catherine L. Mathes; Tennessee Center for Internal Medicine; Summit Medical Group, PLLC; Novo-Nordisk, Inc.; Cigna Home Delivery Pharmacy ("CHDP"); Tel-Drug, Inc.; Tel-Drug of Pennsylvania, LLC; and David Scott Dessender. In this complaint, the Heatons alleged that they had been damaged as a result of Mr. Heaton's suffering acute pancreatitis and a subsequent traumatic brain injury caused by Mr. Heaton's use of the prescription medication Victoza and the medical providers' failure to appropriately "prescribe, counsel, provide, utilize, and/or discontinue this medication." More specifically, the Heatons alleged claims of strict liability and simple negligence against Victoza's manufacturer, Novo-Nordisk, Inc., and health care liability claims against the remaining defendants, including Mr. Heaton's physician who prescribed Victoza, Dr. Mathes, and the out-of-state, mail-order pharmacies where Mr. Heaton's prescriptions for Victoza were filled as well as the pharmacist who filled them: CHDP; Tel-Drug, Inc.; Tel-Drug of Pennsylvania, LLC; and pharmacist Dessender (collectively, "the CHDP Defendants").

According to the Heatons, on July 30, 2014, Dr. Mathes prescribed Victoza for Mr. Heaton to treat his diabetes. Subsequently, in the summer of 2015, the Food and Drug Administration issued a Risk Evaluation and Mitigation Strategy ("REMS") for Victoza to warn of the risk of acute pancreatitis with the medication's use. Mr. Heaton asserted that he was not warned of this risk by any of the named defendants.

On September 27, 2015, Mr. Heaton was transported by ambulance to the University of Tennessee Medical Center with a complaint of severe abdominal pain. In November 2015, while traveling for the Thanksgiving holiday, Mr. Heaton was taken to Northridge Medical Center in Commerce, Georgia, where he was diagnosed with and treated for acute pancreatitis, sepsis, and acute respiratory failure. During this hospitalization, Mr. Heaton was allegedly informed that his pancreatitis was likely a result of his use of Victoza.

The Heatons stated in their complaint that on December 30, 2015, Mr. Heaton was taken to the emergency room of Tennova North in Knox County, Tennessee, with complaints of abdominal pain, nausea, and vomiting. Mr. Heaton reportedly had lost approximately thirty pounds, and a gastrostomy tube was inserted during this visit. He remained in the hospital until January 11, 2016, but was later readmitted from January 15

through January 29, 2016, for ongoing treatment of "necrotizing pancreatitis and severe malnutrition." Mr. Heaton was sent to inpatient rehabilitation for approximately four weeks following his discharge from the hospital. Mr. Heaton asserted that after his discharge from inpatient rehabilitation, he remained in a weakened physical state, which resulted in a fall that caused him to suffer a severe traumatic brain injury on April 22, 2016. Mr. Heaton also asserted that he remained disabled as a result of numerous medical complications, all of which were allegedly caused by his use of Victoza.

The Heatons averred in their complaint, *inter alia*, that the CHDP Defendants failed to provide any patient counseling to Mr. Heaton related to risks associated with his continued use of Victoza. They further alleged that the CHDP Defendants failed to notify Mr. Heaton of the 2015 REMS warning, which noted the risk of developing acute pancreatitis with Victoza's use and instructed observation of symptoms and discontinuance of Victoza if pancreatitis was suspected. The Heatons asserted that the CHDP Defendants should be held liable under the Tennessee Health Care Liability Act ("THCLA") and that proper pre-suit notice had been sent to all defendants. *See* Tenn. Code Ann. § 29-26-121(a) (Supp. 2019) (requiring written pre-suit notice to each defendant within a one-year statute of limitations and at least sixty days prior to filing the complaint).

On January 13, 2017, the CHDP Defendants filed a motion to dismiss the complaint based on, *inter alia*, the seller shield statute, which is codified at Tennessee Code Annotated § 29-28-106 (2012) of the Tennessee Products Liability Act ("TPLA"). This statutory subsection provides that a products liability action cannot be maintained against a product's seller, other than the manufacturer, except in certain enumerated circumstances. *See* Tenn. Code Ann. § 29-28-106. The CHDP Defendants asserted that this statute shielded pharmacists from liability in the situation alleged in the complaint. The CHDP Defendants argued that the Heatons' complaint mislabeled the alleged claims against the CHDP Defendants as health care liability claims when the gravamen of the complaint against the CHDP Defendants was a products liability claim. The CHDP Defendants further claimed that the TPLA, codified at Tennessee Code Annotated §§ 29-28-101, *et seq.* (2012), applies to failure-to-warn claims against pharmacists as sellers of drugs and, therefore, the claim should be dismissed based upon Tennessee Code Annotated § 29-28-106 because the CHDP Defendants were merely sellers and not the product's manufacturer. Finally, the CHDP Defendants argued that they had no duty to provide warnings to Mr. Heaton other than those provided by the manufacturer and that the complaint therefore did not state a health care liability action against the CHDP Defendants.

On August 27, 2018, the trial court entered an order denying the CHDP Defendants' motion to dismiss. Addressing the interplay between the TPLA and the THCLA, the court determined that the seller shield statute contained within the TPLA would not shield the CHDP Defendants from a THCLA claim. Concerning that issue, the

3

court relied upon the reasoning of a multi-district federal court decision involving a similar question: *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. 13-02419-RWZ, 2014 WL 4322409 (D. Mass. Aug. 29, 2014) ("*New England*").[1] The trial court explained:

> There are certainly times where it would be more beneficial for one side or the other to proceed under a cause of action as a product liability claim versus a health care liability claim and vice versa. Because of the procedural differences as previously described, there may be situations where one or the other apply but to proceed under both would be unworkable. Absent any particular guidance from the legislation as to the applicability of the product liability defenses that may have been available prior to the passage of the expanded Tennessee Health Care Liability Act, the courts have to examine the gravamen of the complaint.
>
> In the case at hand, the Plaintiffs allege that the CHDP Defendants are liable for failing to follow the Tennessee Board of Pharmacy Rules; failing to provide patient counseling; failure to warn and failing to act with due and reasonable care. Complaint at ¶45 and also ¶47-48. Based upon the reasoning set forth in the *New England Compounding Pharmacy* case and the Tennessee precedent regarding pharmacists' duty to warn . . . this Court finds that this case should proceed as a health care liability action and the defenses available under the Tennessee Product Liability Act at Tenn. Code Ann. § 29-28-106 are not applicable and therefore the Motion to Dismiss should be DENIED.

On September 26, 2018, the CHDP Defendants filed a motion seeking permission for an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. Following consideration of the Rule 9 factors, the trial court granted the Motion concerning the issue of the interplay between the TPLA and the THCLA and the applicability of a TPLA defense to the Heatons' claims against the CHDP Defendants. The trial court concluded that interlocutory appeal should be granted to enable this Court to address the issue of whether the seller shield defense, codified at Tennessee Code Annotated § 29-28-106, should be applied to bar a claim under the THCLA. This Court likewise granted permission for interlocutory review.

---

[1] In *New England*, certain of the defendants were clinics, hospitals, and other health care providers from Tennessee. Because some defendants in the case were from Tennessee, the Massachusetts District Court analyzed the claims pursuant to Tennessee law.

## II. Issue Presented

Pursuant to Tennessee Rule of Appellate Procedure 9, "we are limited on appeal to the question certified by the trial court in its order granting permission to seek an interlocutory appeal and in this Court's order granting the appeal." *In re Bridgestone/Firestone & Ford Motor Co. Litig.*, 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008) (citing Tenn. R. App. P. 9). The trial court's order and this Court's order granting interlocutory appeal present the following issue for our review:

> If the complaint asserts a claim under the Tennessee Health Care Liability Act against the pharmacy/pharmacist defendants (Cigna Defendants), are the pharmacy/pharmacist defendants barred from asserting the "seller shield" defense set forth in the Tennessee Products Liability Act, Tenn. Code Ann. § 29-28-106?

## III. Standard of Review

Following the grant of an application for interlocutory appeal, "the standard of review is the same standard that would have been applied to the issue(s) in an appeal as of right." *See Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005). A trial court's denial of a motion to dismiss is a question of law, which this Court reviews *de novo* with no presumption of correctness. *See Cannon ex rel. Good v. Reddy*, 428 S.W.3d 795, 799 (Tenn. 2014); *see also Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010). Upon appeal of such an order, "we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness." *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997).

This appeal also involves the interpretation of state statutes. As our Supreme Court has explained:

> Statutory construction is a question of law that is reviewable on a de novo basis without any presumption of correctness. When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out legislative intent without broadening or restricting the statute beyond its intended scope. In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. When a statute is clear, we apply the plain meaning without complicating the task. Our obligation is simply to enforce the written language. It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources. Further, the language of a statute cannot be considered in a vacuum, but "should be construed, if practicable, so that its component

5

parts are consistent and reasonable." *Marsh v. Henderson*, 221 Tenn. 42, 424 S.W.2d 193, 196 (1968). Any interpretation of the statute that "would render one section of the act repugnant to another" should be avoided. *Tenn. Elec. Power Co. v. City of Chattanooga*, 172 Tenn. 505, 114 S.W.2d 441, 444 (1937). We also must presume that the General Assembly was aware of any prior enactments at the time the legislation passed.

*In re Estate of Tanner*, 295 S.W.3d 610, 613-14 (Tenn. 2009) (other internal citations omitted).

IV. Interplay Between TPLA and THCLA

The issue on appeal involves the interplay between the TPLA and the THCLA when health care liability claims are asserted against a pharmacist and/or pharmacy for failure to warn of risks associated with a prescription medication. Specifically, the issue presented questions whether defendant pharmacies or pharmacists may assert the seller shield defense contained within the TPLA when the plaintiffs' complaint states a claim pursuant to the THCLA. We agree with the trial court's determination that the seller shield defense is inapplicable to this action.

The "seller shield" is found at Tennessee Code Annotated § 29-28-106 and provides as follows:

> No product liability action, as defined in § 29-28-102, shall be commenced or maintained against any seller, other than the manufacturer, unless:
>
> (1) The seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought;
>
> (2) Altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought;
>
> (3) The seller gave an express warranty as defined by title 47, chapter 2;
>
> (4) The manufacturer or distributor of the product or part in question is not subject to service of process in this state and the long-arm statutes of Tennessee do not serve as the basis for obtaining service of process; or

6

(5)     The manufacturer has been judicially declared insolvent.

Tennessee Code Annotated § 29-28-102 (2012) defines a product liability action as:

> [A]ll actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

In conjunction with an analysis of the interplay between the TPLA and the THCLA, some historical context is helpful. Before the more recent amendments to the THCLA were enacted, the statute originally spoke in terms of "medical malpractice" actions, which the statute defined as

> an action for damages for personal injury or death as a result of any medical malpractice by a health care provider, whether based upon tort or contract law. The term shall not include any action for damages as a result of negligence of a health care provider when medical care by such provider is not involved in such action.

Tenn. Code Ann. § 29-26-102 (1978). *See Burris v. Hosp. Corp. of Amer.*, 773 S.W.2d 932, 934 (Tenn. Ct. App. 1989).

In *Burris*, a surgeon performed surgery on the patient's lung, utilizing "Teflon felt" to support the sutures used to close the lung. *See id.* at 933. Following the patient's death in 1987, allegedly due to complications she suffered as a result of the Teflon felt, the patient's estate filed suit against the hospital, the surgeon, and others. *See id.* The trial court granted summary judgment to the hospital, determining that the three-year statute of repose contained within the Medical Malpractice Act would apply. *See id.*

On appeal in *Burris*, the patient's estate argued that the claim asserted was in the nature of a products liability claim, which was not within the purview of the medical malpractice statutes. *See id.* at 935. This Court disagreed, stating that a claim could fall within the purview of the Medical Malpractice Act even though it "involve[d] the characteristics of a products liability case." *See id.* This Court reasoned that because the act used the inclusive phrase, "whether based upon tort or contract law," and because all

civil actions were based in either contract or tort, "any ground" alleged would fall within the purview of the Medical Malpractice Act. *See id.*

More specifically, concerning actions against pharmacists and pharmacies, both the Tennessee Supreme Court and this Court have determined that a pharmacist or pharmacy owes a professional duty of care to a patient to act in compliance with the standard of care required by the pharmacy profession. *See Pittman v. Upjohn Co.*, 890 S.W.2d 425, 434 (Tenn. 1994); *see also Dooley v. Everett*, 805 S.W.2d 380, 385 (Tenn. Ct. App. 1990) ("The pharmacist is a professional who has a duty to his customer to exercise the standard of care required by the pharmacy profession in the same or similar communities as the community in which he practices his profession."). This is, of course, similar to the standard applicable to all medical professionals in malpractice/health care liability actions. *See, e.g., Shipley v. Williams*, 350 S.W.3d 527, 537 (Tenn. 2011) (explaining the standard applicable to medical defendants).

In 2011, the Tennessee Legislature passed the Tennessee Civil Justice Act of 2011, which amended, *inter alia*, Tennessee's Medical Malpractice Act. *See Ellithorpe v. Weismark*, 479 S.W.3d 818, 826 (Tenn. 2015) (citing 2011 Pub. Acts, Ch. 510 § 9 (H.B. 2008)). As our Supreme Court has explained:

> [T]he Tennessee Civil Justice Act of 2011 amended the existing Tennessee Medical Malpractice Act by removing all references to "medical malpractice" from the Tennessee Code and replacing them with "health care liability" or "health care liability action" as applicable. Furthermore, section 29-26-101 was added to the Code which defined "health care liability action" as "any civil action, including claims against the state or a political subdivision thereof, alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, *regardless of the theory of liability on which the action is based*." Tenn. Code Ann. 29-26-101(a)(1) (Supp. 2011) (emphasis added). This same section went on to provide that "[a]ny such civil action or claim is subject to the provisions of this part regardless of any other claims, causes of action, or theories of liability alleged in the complaint." *Id*. § 29-26-101(c).

*Id*.

The THCLA defines a "health care provider" as, *inter alia*, a "health care practitioner licensed, authorized, certified, registered, or regulated under any chapter of title 63 or title 68 . . . ." Tenn. Code Ann. § 29-26-101 (a)(2)(A) (Supp 2019). Pharmacies and pharmacists are regulated under Title 63, Chapter 10 of the Code. *See* Tenn. Code Ann. § 63-10-201, *et seq*. (2017). As such, pharmacists and pharmacies clearly come within the THCLA's definition of health care providers.

Although Tennessee courts have previously applied malpractice/health care liability law to claims involving pharmacists or pharmacies who failed to warn patients of the risks of particular medications, our research has revealed no Tennessee cases addressing the interplay between the THCLA and the TPLA when there is an allegation that the medication itself was dangerous. The issue of the interplay between the TPLA and THCLA has only been specifically addressed by the Massachusetts federal district court in the *New England* case, both in the 2014 decision and in a subsequent 2016 decision. *See In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. 13-02419-RWZ, 2016 WL 11045600 (D. Mass. Feb. 29, 2016) ("*New England II*"). In *New England II*, the federal court ultimately determined that the THCLA would control in that litigation. *See id*. at *1. We note that "[c]ases from other jurisdictions, including federal cases, are always instructive, sometimes persuasive, but never controlling in our decisions." *Summers Hardware & Supply Co., Inc. v. Steele*, 794 S.W.2d 358, 362 (Tenn. Ct. App. 1990).

The *New England II* plaintiffs had asserted a cause of action concerning a product, methylprednisolone acetate ("MPA"), which adversely affected the plaintiffs following their receipt of the contaminated injections of the drug. *See* 2016 WL 11045600, at *1. Because the plaintiffs' injuries in that case resulted from both a product and the provision of health care services (injections), the district court determined that both the TPLA and the THCLA ostensibly governed. *See id*. However, in *New England II*, the district court determined that the mutually exclusive liability regimes of the TPLA and the THCLA left them in conflict with one another. *See id*. at *2. The district court concluded: "Because the coverage provisions of the two statutes overlap in this instance, their conflicting liability and damages provisions preclude the application of both, and force a choice between them." *Id*. To resolve this conflict, the district court followed Tennessee precedent regarding such conflicts and applied "the more specific statute in lieu of the more general one." *Id.* (citing *Graham v. Caples,* 325 S.W.3d 578, 582 (Tenn. 2010)). Under this approach, the district court concluded that the THCLA was the more specific statute between the two; therefore, the THCLA took precedence and rendered the TPLA inapplicable. *See New England II*, 2016 WL 11045600, at *2.

We determine that the provisions of the TPLA and the THCLA maintain some overlap in coverage when the product involved has a medical use or application. For example, the THCLA governs "any civil action . . . alleging that a health care provider or providers have caused an injury related to the provision of, or failure to provide, health care services to a person, regardless of the theory of liability on which the action is based." Tenn. Code Ann. § 29-26-101(a)(1). As the federal district court determined in *New England II*, the terms "any" and "related" contained in Tennessee Code Annotated § 29-26-101(a)(1) emphasize the expansive nature of the THCLA. *See* 2016 WL 11045600, at *1. The *New England II* Court explained that "[a] legislature's use of the word 'any' typically indicates its intent for a statute to have maximal reach." *Id.* (citing

*United States v. Gonzalez*, 520 U.S. 1, 5 (1997)).  Similarly, the *New England II* Court explained that the word, "related," "denotes a similar breadth."  *See* 2016 WL 11045600, at *1 (citing BLACK'S LAW DICTIONARY (10th ed. 2014)).

We note that our Supreme Court's interpretation of the THCLA supports this approach.  *See Ellithorpe*, 479 S.W.3d at 827 (emphasizing that the THCLA applies to "*all* civil actions alleging that a covered health care provider or providers have caused an injury related to the provision of, or failure to provide health care services").  Likewise, the TPLA also provides expansive coverage governing "all actions brought for or on account of personal injury, death, or property damage caused by or resulting from . . . any product . . . under any . . . theory in tort or contract whatsoever."  *See* Tenn. Code Ann. § 29-28-102(6).

> As the *New England II* Court explained:
>
> The THCLA precludes faultless liability, and requires that plaintiffs prove some dereliction of a professionally acceptable standard of care.  Tenn. Code Ann. § 29-26-115(a) (West 2015); *see also Rye v. Women's Care Center of Memphis, MPLLC*, [477] S.W.3d [235, 265-67], 2015 WL 6457768 at *23-24 (Tenn. Oct. 26, 2015).  The TPLA, however, embraces strict liability, and requires no showing of fault.  Tenn. Code Ann. § 29-28-105(a) (West 2015).  Further, the two statutes have incompatible rules for joint tortfeasor liability.  The THCLA follows Tennessee's general liability rule that "each defendant will be liable only for the percentage of the damages caused by it," *Ridings v. Ralph M. Parsons Co.*, 914 S.W.2d 79, 83 (Tenn. 1996).  The TLPA, however, overrides that rule, and imposes joint and several liability in strict products liability actions.  *See Owens v. Truckstops of Am.*, 915 S.W.2d 420, 432 (Tenn. 1996) ("[J]oint and several liability . . . is essential to the theory of strict products liability.").

*New England II*, 2016 WL 11045600, at *2 (footnote omitted).[2]

In the case at bar, the trial court properly determined that the complaint filed by the plaintiffs was a health care liability action.  *See Ellithorpe*, 479 S.W.3d at 827.  As the trial court noted in its order granting permission for an interlocutory appeal, "the Cigna

---

[2] Both parties assert that this Court should be persuaded by *McDonald v. W.-Ward Pharm. Corp.*, No. 2:18-CV-02084-JTF-DKV, 2018 WL 6499353, at *6 (W.D. Tenn. Oct. 3, 2018), *report and recommendation adopted sub nom. McDonald v. Schriner*, No. 2:18-CV-02084-JTF-DKV, 2019 WL 1040978 (W.D. Tenn. Mar. 5, 2019).  We note that in *McDonald*, the federal court similarly determined that a claim against a pharmacy for dispensing medication without warning of risks fell under the THCLA while claims against the medication's manufacturers fell under the TPLA.

Defendants identify the issue [for interlocutory appeal] as 'whether . . . Tennessee law allows the seller shield defense . . . to be asserted as a defense to claims asserted against a pharmacist under the Health Care Liability Act[.]'" The trial court accordingly determined that the CHDP Defendants had "conceded the applicability of the Health Care Liability Act to this cause of action." As such, the only question that was certified to this Court is "[i]f the complaint asserts a claim under the Tennessee Health Care Liability Act . . . are the pharmacy/pharmacist defendants barred from asserting the "seller shield" defense set forth in the Tennessee Products Liability Act, Tenn. Code Ann. § 29-28-106[?]"

Based on the question as it was certified to this Court, we must determine only whether the seller shield defense contained within the TPLA may be applied to provide immunity for a defendant sued under the THCLA. This question requires that we engage in statutory interpretation relative to the two acts. As our Supreme Court has previously explained:

> "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). "The text of the statute is of primary importance." *Mills* [*v. Fulmarque, Inc.*], 360 S.W.3d [362,] 368 [(Tenn. 2012)]. "A statute should be read naturally and reasonably, with the presumption that the legislature says what it means and means what it says." *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015) (citing *BellSouth Telecomms., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)).

*Moreno v. City of Clarksville*, 479 S.W.3d 795, 804 (Tenn. 2015) (other internal citations omitted). Moreover, Tennessee Code Annotated § 1-3-103 (2014) provides that "[i]f provisions of different titles or chapters of the code appear to contravene each other, the provisions of each title or chapter shall prevail as to all matters and questions growing out of the subject matter of that title or chapter." *See, e.g., Sneed v. City of Red Bank*, *Tenn.*, 459 S.W.3d 17, 27 (Tenn. 2014) (holding that the more recently enacted Tennessee Human Rights Act was "an independent statutory scheme that create[d] remedies and remove[d] governmental immunity" such that it, rather than the Governmental Tort Liability Act, controlled the adjudication of the plaintiff's age discrimination claim against a municipality).

Based on the trial court's determination and the CHDP Defendants' concession that the claims stated fall under the THCLA, we determine that the seller shield defense contained within the TPLA cannot apply. A natural and reasonable reading of the language of Tennessee Code Annotated § 29-28-106 demonstrates that it only applies to product liability actions. *See Moreno*, 479 S.W.3d at 804 (cautioning against the expansion of a statute beyond its intended scope). Furthermore, the THCLA applies to

11

all health care providers, including pharmacies and pharmacists, without limitation based on any type of product seller immunity. *See, e.g.*, Tenn. Code Ann. § 29-26-101, *et seq.*

The CHDP Defendants' attempts to utilize the TPLA's seller shield defense to immunize themselves from liability for a claim filed pursuant to the THCLA would be akin to an attempt by a defendant in a product liability action to defend on the basis of lack of pre-suit notice, which is a defense only to a claim under the THCLA. Because the complaint states a cause of action pursuant to the THCLA, the provisions of that statute "shall prevail as to all matters and questions growing out of the subject matter of that title or chapter." Tenn. Code Ann. § 1-3-103. As such, the seller shield defense contained within the TPLA is applicable only to product liability actions and cannot be used as a defense to the Heatons' THCLA claims.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's denial of the CHDP Defendants' motion to dismiss. Costs on appeal are taxed to the CHDP Defendants: Cigna Home Delivery Pharmacy; Tel-Drug, Inc.; Tel-Drug of Pennsylvania, LLC; and David Scott Dessender. This matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
THOMAS R. FRIERSON, II, JUDGE

12